# EXHIBIT A



# Gaddy v. Long & Foster Cos.

United States District Court for the District of New Jersey, Camden Vicinage

March 15, 2022, Decided; March 16, 2022, Filed

Civil No. 21-2396 (RBK/SAK)

**Reporter**
2022 U.S. Dist. LEXIS 46657 *

MARIXSA GADDY, et al., Plaintiffs, v. THE LONG & FOSTER COMPANIES, INC., Defendant.

**Subsequent History:** Motion granted by *Gaddy v. Long & Foster Co., 2023 U.S. Dist. LEXIS 22935 (D.N.J., Feb. 10, 2023)*

## Core Terms

Plaintiffs', allegations, misuse, hackers, accessed, personal information, motion to dismiss, unauthorized, concrete, bailment, breach of confidence, handbook, imminent, unjust enrichment, third party, experienced, disclosure, damages, privacy, injury in fact, credit card, future harm, Confidentiality, subclasses, consumers, employees, courts, named plaintiff, speculative, cause of action

**Counsel:** **[*1]** For MARIXSA GADDY, Plaintiff: GARY S. GRAIFMAN, KANTROWITZ, GOLDHAMER & GRAIFMAN, PC, MONTVALE, NJ.

For THE LONG & FOSTER COMPANIES, INC., a Virginia corporation, Defendant: DAVID HARTMAN COLVIN, LEAD ATTORNEY, FOX ROTHSCHILD LLP, PHILADELPHIA, PA.

**Judges:** ROBERT B. KUGLER, United States District Judge.

**Opinion by:** ROBERT B. KUGLER

## Opinion

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant's Motion to Dismiss the Amended Complaint (ECF No. 16). For the reasons stated herein, the motion is **GRANTED in part** and **DENIED in part**.

## I. FACTUAL BACKGROUND

Defendant The Long & Fosters Companies, Inc. ("Defendant" or "Long & Foster") is a private residential real estate company incorporated in Virginia. (ECF No. 11, Am. Compl. ¶¶ 2, 52). Plaintiffs Marixsa Gaddy, Shawn Marie Ryan, and William O'Bryant ("Plaintiffs") are former employees of Long & Foster. (*Id.* ¶ 3). Plaintiff Gaddy is a citizen of New Jersey and worked for Defendant from 2010 to 2014. (*Id.* ¶¶ 19-20). Plaintiff Ryan is a citizen of Maryland and worked for Defendant from 2015 to 2016. (*Id.* ¶¶ 32-33). Plaintiff O'Bryant is a citizen of Pennsylvania and worked for Defendant from 2015 to 2018. (*Id.* ¶¶ 42-43). Plaintiffs are bringing **[*2]** this putative class action against Long & Foster individually and on behalf of all other similarly situated individuals. (*Id.* at 1). The class members are current or former employees of Long & Foster, including property managers and vacation rental owners. (*Id.* ¶ 3).

Plaintiffs provided their personally identifiable information ("PII")—including their names, addresses, date of birth, telephone numbers, bank account numbers, financial account information, and Social Security numbers—to Defendant or its subsidiaries as a condition of their employment. (Am. Compl. ¶¶ 4, 12, 21, 34, 44).

On August 22, 2020, Defendant was the victim of a ransomware attack perpetrated by unknown third parties. (*Id.* ¶ 57, Exs. 1 and 2). During the attack, the hackers accessed Defendant's servers and systems, potentially exposing the PII of tens of thousands of people ("the Data Breach"). (*Id.*) Defendant worked with the Federal Bureau of Investigation and cybersecurity experts to investigate the incident. (*Id.* ¶ 59). On or around September 14, 2020, Defendant sent letters to the named Plaintiffs and other class members notifying them of the Data Breach. (*Id.* ¶ 20, 33, 43, 60, Ex. 1). Defendant identified additional **[*3]** persons impacted

by the Data Breach and notified those individuals on December 1, 2020. (*Id.* ¶ 13, Ex. 2).

In these letters, Defendant stated that it had "determined the cybercriminal(s) had access to Long & Foster's systems...and that [plaintiffs] personal information may have been accessible to the cybercriminal(s) as a result." (Am. Compl., Exs. 1 and 2). Defendant reported it had "no indication at this time that [plaintiffs] personal information was accessed by an unauthorized individual...." (*Id.*) Defendant offered Plaintiffs twenty-four months of complimentary identity theft repair and monitoring services. (*Id.* ¶ 75, Ex. 1).

Plaintiffs contend that "[t]he Data Breach was preventable." (Am. Compl. ¶ 81). According to Plaintiffs, Long & Foster was aware (or should have been) of the danger of a data security breach. (*Id.* ¶ 82-87). Plaintiffs allege that, despite this knowledge, Defendant failed to, *inter alia*, implement adequate cyber security measures to protect Plaintiffs' PII or to give Plaintiffs prompt notice of the Breach after the fact. (*Id.* ¶ 92, 94-97). As a result, Plaintiffs allege they've experienced numerous harms, including a "loss of privacy" and "theft" of their PII. **[*4]** (*Id.* ¶ 78). They contend that they "must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their credit because of the Data Breach." (*Id.* ¶ 74).

In addition, Plaintiff Gaddy alleges she "suffered misuse of her PII as a result of the Data Breach." (*Id.* ¶ 24). In November 2020, she discovered that an unknown third party had opened an unauthorized credit card in her name. (*Id.* ¶ 22). That person made one charge on the card before Plaintiff Gaddy cancelled the card. (*Id.*) The unauthorized credit card remains on Plaintiff Gaddy's credit report as a cancelled account. (*Id.*)

## II. PROCEDURAL HISTORY

On February 11, 2021, Plaintiffs filed the instant action against Defendant on behalf of themselves and a class, which includes New Jersey, Maryland, and Pennsylvania subclasses. (ECF No. 1). On May 18, 2021, Plaintiffs filed an Amended Complaint, claiming breach of contract, breach of implied contract, breach of the covenant of good faith and fair dealing, violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (*73 P.S. §§ 201-1, et seq.*), violations of *New Jersey's Consumer Fraud Act* (*N.J. Rev. Stat. §§ 56:8-1, et seq.*), violations of *Maryland's Consumer Protection Act (MD Code §§ 13-301, et seq.)*, breach of confidence, bailment, **[*5]** unjust enrichment, and negligence. (ECF No. 11). They seek damages, injunctive, and declaratory relief. (*Id.*) On June 25, 2021, Defendant moved to dismiss the Amended Complaint pursuant to *Federal Rules of Civil Procedure 12(b)(1)* and *12(b)(6)*. (ECF No. 16, "Def. Mot."). Plaintiffs responded opposing this motion on July 6, 2021, (ECF No. 21, "Pl. Opp'n Br."), to which Defendant replied on July 12, 2021, (ECF No. 23, "Def. Reply").

## III. LEGAL STANDARD

### a. Motion to Dismiss for Lack of Subject Matter Jurisdiction

*Federal Rule of Civil Procedure 12(b)(1)* allows a court to dismiss a complaint for lack of subject matter jurisdiction. "Two types of challenges can be made under *Rule 12(b)(1)*—'either a facial or a factual attack.'" *In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 632 (3d Cir. 2017)* (citation omitted). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint[.]" *Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016)*. A factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.*

Defendant launches a facial attack on jurisdiction here, asserting that Plaintiffs lack standing under Article III based on the facts as pleaded in the Amended Complaint. "In reviewing facial challenges to standing, [courts] apply the same standard as **[*6]** on review of a motion to dismiss under *Rule 12(b)(6)*." *In re Horizon, 846 F.3d at 633*.

### b. Motion to Dismiss for Failure to State a Claim

When evaluating a motion to dismiss under *Federal Rule of Civil Procedure 12(b)(6)*, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)* (quoting *Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)*). The complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*

Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). While "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

## IV. DISCUSSION

Defendant asks the Court to dismiss the Amended Complaint pursuant to Rule 12(b)(1), arguing that Plaintiffs lack standing to pursue their claims under Article III of the U.S. Constitution. (Def. Mot. 9-20). Defendant also moves to dismiss each of Plaintiffs' substantive claims pursuant to Rule 12(b)(6). (Id. at 20-39). We start with Defendant's standing argument.

### A. Standing

"Under Article III of the United States Constitution, the power of the judiciary 'extends only to Cases and [*7] Controversies." Long v. Se. Pa. Transp. Auth., 903 F.3d 312, 320 (3d Cir. 2018) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 337, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)). "One element of the case-or-controversy requirement is that [plaintiffs]...must establish that they have standing to sue." Raines v. Byrd, 521 U.S. 811, 818, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997). To have standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, 578 U.S. at 338. "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2207, 210 L. Ed. 2d 568 (2021).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 578 U.S. at 339 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). A particularized injury "must affect the plaintiff in a personal and individual way." Id. An injury is concrete if it is "real, and not abstract." Ramirez, 141 S. Ct. at 2204 (quotation omitted). The Supreme Court recently clarified that "[v]arious intangible harms can...be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts....Those include, for example, reputational harms, disclosure of private [*8] information, and intrusion upon seclusion." Id. (internal citation omitted).

In a suit for damages, "the risk of future harm on its own does not support Article III standing." Id. at 2213. "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." Id. at 2210. To be considered "imminent" for standing purposes, "[a] threatened injury must be 'certainly impending.'" Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013) (quoting Whitmore v. Arkansas, 495 U.S. 149, 158, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990)). "'[A]llegations of possible future injury' are not sufficient." Id.

### 1. Plaintiff O'Bryant & Plaintiff Ryan[1]

As a result of the Data Breach, Plaintiffs O'Bryant and Ryan allege that they have experienced: (1) "lost time, annoyance, interference, and inconvenience"[2] ; (2) "anxiety and increased concerns for the loss of [their] privacy"; (3) "damages to and diminution in the value of [their] PII"; and (4) "imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from [their] PII[.]" (Am. Compl. ¶¶ 38-40, 48-50, 78). Defendant argues that Plaintiffs O'Bryant [*9] and Ryan have not experienced a "concrete" or "actual or imminent" injury,

---

[1] In a letter entitled "supplemental authority," (ECF No. 24), Plaintiffs urge the Court to follow the lead of a South Carolina district court who concluded that plaintiffs had standing in a post-Ramirez data breach action. In re Blackbaud, Inc., Customer Data Breach Litig., No. 3:20-MN-02972-JMC, 2021 U.S. Dist. LEXIS 123355, 2021 WL 2718439, at *6 (D.S.C. July 1, 2021). We note that both Ramirez and In re Blackbaud were published before Plaintiffs filed their response to Defendant's motion to dismiss. As Defendant notes, Plaintiffs' letter is, in effect, a sur-reply. (ECF No. 25). Since sur-replies are not permitted without leave of the Court, see **Local Civil Rule 7.1(d)(6)**, we decline to consider the arguments raised in Plaintiffs' letter. And, regardless, In re Blackbaud—a non-precedential, out of circuit opinion—would not change our analysis here.

[2] "Lost time" refers to the time spent "dealing with the consequences of the Data Breach." (Am. Compl. ¶¶ 35, 45).

and therefore lack standing. (Def. Mot. 9-20). We agree.

The Third Circuit's decision in *Reilly v. Ceridian Corp.* governs our analysis. 664 F.3d 38 (3d Cir. 2011). In *Reilly*, a hacker accessed the system of the defendant, a payroll processer, potentially exposing the personal and financial information of 27,000 customers, including the plaintiffs. Id. at 40. It was "not known whether the hacker read, copied, or understood the data." *Id.* The plaintiffs filed suit, "alleg[ing] that they: (1) ha[d] an increased risk of identity theft, (2) incurred costs to monitor their credit activity, and (3) suffered from emotional distress." *Id.* The Third Circuit affirmed the district court's dismissal of the action for lack of standing on appeal, concluding the plaintiffs "ha[d] yet to suffer any harm, and their alleged increased risk of future injury is nothing more than speculation." Id. at 43. With no allegations that their data had been misused, the plaintiffs could not show that they had experienced actual harm, id. at 42, and any future harm was not "certainly impending" but "dependent on entirely speculative, future actions of an unknown third-party," id. at 42-43. The court stressed **[*10]** that "no evidence suggests that the data has been—or will ever be—misused. The present test is actuality, not hypothetical speculations concerning the possibility of future injury." Id. at 43.

### i. Actual Injury

Plaintiffs O'Bryant and Ryan have not suffered an actual injury as a result of the Data Breach. Critically, these Plaintiffs fail to allege any "actual misuse" of their PII—"the touchstone of the *Reilly* standard." Storm v. Paytime, Inc., 90 F. Supp. 3d 359, 366 (M.D. Pa. 2015) ("*Reilly* draws a clear line in the sand in this context as to when a data breach becomes a harm."). Like the *Reilly* plaintiffs, Plaintiffs O'Bryant and Ryan do not present facts to support an inference that their data was accessed during the Data Breach, or that their PII has been disclosed or misused as a result. In fact, the letters Defendant sent to Plaintiffs following the Breach state that there was "no indication at this time that [their] personal information was accessed by an unauthorized individual...." (Am. Compl., Exs. 1 and 2). Third Circuit standing jurisprudence is clear: "[i]n data breach cases where no misuse is alleged...there has been no injury." Reilly, 664 F.3d at 45. Thus, Plaintiffs O'Bryant and Ryan have not suffered an injury under *Reilly*.

Plaintiffs attempt to distinguish the **[*11]** instant case from *Reilly* by arguing that Plaintiff Gaddy, unlike the *Reilly* plaintiffs, has experienced "actual misuse" of her PII. (Pl. Opp'n Br. 8). But this allegation, perhaps sufficient to confer standing on Plaintiff Gaddy, does not demonstrate that Plaintiffs O'Bryant and Ryan have experienced an injury in fact. *Accord* In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig., No. CV 19-MD-2904, 2021 U.S. Dist. LEXIS 240360, 2021 WL 5937742, at *7 (D.N.J. Dec. 16, 2021) ("[T]he fact that some plaintiffs' Personal Information may have been accessed and misused does not necessarily create a particularized injury as to all Plaintiffs whose data was in AMCA's possession."); *see also* In re Rutter's Inc. Data Sec. Breach Litig., 511 F. Supp. 3d 514, 524 (M.D. Pa. 2021) ("[S]o the argument goes, because two other plaintiffs suffered an actual injury, the risk that Plaintiffs Johnson and Palermo will too is not speculative, but actual and imminent. ...We are not persuaded. As a fundamental matter, Plaintiffs forget that we do not dispense standing 'in gross.'" (citations omitted)). Each named plaintiff in a class action must demonstrate that they themselves have been personally injured to have standing. *See* In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 634 (3d Cir. 2017) (citing Lewis v. Casey, 518 U.S. 343, 357, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)).

Next, Plaintiffs O'Bryant and Ryan' time and efforts "responding to the consequences of the Data Breach," (Am. Compl. ¶¶ 35, 39, 45, 49), cannot be used to show a concrete injury. Plaintiffs "cannot manufacture **[*12]** standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." Clapper, 568 U.S. at 416. The Third Circuit explicitly rejected this theory of standing in *Reilly*, finding:

> Appellants' alleged time and money expenditures to monitor their financial information do not establish standing, because costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more "actual" injuries than the alleged "increased risk of injury" which forms the basis for Appellants' claims. ... That a plaintiff has willingly incurred costs to protect against an alleged increased risk of identity theft is not enough to demonstrate a "concrete and particularized" or "actual or imminent" injury.

Reilly, 664 F.3d at 46 (internal citation omitted); *see also* Graham v. Universal Health Serv., Inc., 539 F. Supp. 3d 481, 487 (E.D. Pa. 2021) ("Plaintiffs' preventative measures to monitor their financial records do not establish injury-in-fact.") (collecting cases); Browne v.

US Fertility, LLC, No. CV 21-367, 2021 U.S. Dist. LEXIS 115897, 2021 WL 2550643, at *3 (E.D. Pa. June 22, 2021) (applying *Reilly*).

Finally, Plaintiffs O'Bryant and Ryan's remaining alleged injuries do not establish standing. Plaintiffs' claim that they suffered injury in the form of a "diminution in value" of their PII due to the Data Breach is meritless. (Am. Compl. ¶¶ 38, **[*13]** 48). "[W]ithout particularized allegations the [plaintiffs'] Personal Information were actually accessed or misused, these plaintiffs cannot plausibly allege that their information suffered any decrease in value." In re Am. Med. Collection Agency, 2021 U.S. Dist. LEXIS 240360, 2021 WL 5937742, at *10; see also Graham, 539 F. Supp. 3d at 488. Additionally, Plaintiffs' vague allegations of "anxiety" and "annoyance" untethered to an actual injury or material risk of future harm is inadequate to demonstrate an injury in fact. Reilly, 664 F.3d at 44-46 (dismissing for lack of standing though the plaintiffs had made allegations of "emotional distress"); Clemens v. ExecuPharm, Inc., No. CV 20-3383, 2021 U.S. Dist. LEXIS 35178, 2021 WL 735728, at *5 n.2 (E.D. Pa. Feb. 25, 2021) (appeal pending) ("*Reilly* declined to find plaintiffs' emotional distress established standing[.]").

### ii. Future Injury

Nor can Plaintiffs O'Bryant and Ryan show an imminent or material risk of future harm. Plaintiffs argue that "they have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their PII being placed in the hands of unauthorized third parties." (Pl. Opp'n Br. 8-9) (citing Am. Compl. ¶¶ 30, 40, 50). This argument crumbles under *Reilly*, at least with respect to Plaintiffs O'Bryant and Ryan. As in *Reilly*, "we cannot now describe how [plaintiffs] will be injured ... without beginning our **[*14]** explanation with the word 'if': if the hacker read, copied, and understood the hacked information, and if the hacker attempts to use the information, and if he does so successfully, only then will [plaintiffs] have suffered an injury." Reilly, 664 F.3d at 43. The Third Circuit has plainly stated that, in the data breach context, the kind of speculative risk of future harm alleged here does not constitute an injury in fact. *Id.* ("A plaintiff ... lacks standing if his 'injury' stems from an indefinite risk of future harms inflicted by unknown third parties."); In re Rutter's Inc., 511 F. Supp. 3d at 525 ("The Third Circuit was unequivocal—where a plaintiff suffers no actual injury in a data breach, that plaintiff cannot rely on the mere possibility of future injury to establish standing."); Browne, 2021 U.S. Dist. LEXIS 115897, 2021 WL 2550643, at *3 ("Because Plaintiff has pleaded that he faces an indefinite risk of future harm, his claim cannot survive under the *Reilly* standard.").

It is not relevant that "the attack in *Reilly* was 'neither intentional nor malicious,' while here, Defendant ... admits that 'it was the victim of a ransomware attack[.]'" (Pl. Opp'n Br. 8). When faced with this precise argument in a recent data breach case, an Eastern District of Pennsylvania court held that:

> This distinction regarding **[*15]** the motives of the attacker does not render the injuries of these Plaintiffs any more concrete. The target of a ransomware attack is the holder of the confidential data; the misappropriation of the data, whether by theft or merely limitation on access to it, is generally the means to an end: extorting payment. A court is still left to speculate, as in *Reilly*, whether the hackers acquired Plaintiffs' [personal health information] in a form that would allow them to make unauthorized transactions in their names, as well as whether Plaintiffs are also intended targets of the hackers' future criminal acts.

Graham, 539 F. Supp. 3d at 487. As in *Graham*, the fact that Defendant experienced a ransomware attack, as opposed to another form of cyber intrusion, does not convert the impermissibly speculative risk that Plaintiffs' PII will be misused in the future into a concrete, imminent injury in fact.

This Court is bound by the Third Circuit's precedent in *Reilly*. Because they have not demonstrated an injury in fact, Plaintiffs O'Bryant and Ryan lack standing. Accordingly, Plaintiffs O'Bryant and Ryan must be dismissed from the instant action.

### 2. Plaintiff Gaddy

Like Plaintiffs O'Bryant and Ryan, Plaintiff Gaddy also alleges that she **[*16]** has experienced: (1) "lost time, annoyance, interference, and inconvenience"; (2) "anxiety and increased concerns for the loss of her privacy"; (3) "damages to and diminution in the value of her PII"; and (4) "imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII[.]" (Am. Compl. ¶¶ 28-30).

Unlike the other named Plaintiffs, however, Plaintiff

Gaddy also alleges that she has "suffered misuse of her PII as a result of the Data Breach." (Am. Compl. ¶ 24). She asserts that, three months after the data breach, she discovered that an unauthorized credit card had been opened in her name. (*Id.* ¶ 22). Though she cancelled the card, it remains on her credit report as a cancelled account. (*Id.*) And "[a]s a result of the fraudulent credit card and the Data Breach notice, Ms. Gaddy was forced to spend time dealing with the consequences of the Data Breach, which includes time spent...cancelling the fraudulent account, freezing her credit reports, self-monitoring her accounts...." (*Id.* ¶ 25). We must now consider whether these allegations demonstrate a sufficiently concrete injury in fact as to Plaintiff Gaddy.

We conclude **[*17]** that the opening of a fraudulent credit card in Ms. Gaddy's name as well as the time and effort she spent responding to this fraud likely constitutes a tangible, concrete injury in fact. *See In re Am. Med. Collection Agency, 2021 U.S. Dist. LEXIS 240360, 2021 WL 5937742, at \*7* (holding that a plaintiff who "experienced several fraudulent charges on her financial accounts and a fraudulent account opened in her name" had alleged a "quintessentially concrete" economic injury). Indeed, Long & Foster does not seem to contest this point.

Moreover, Plaintiff Gaddy has sufficiently alleged an intangible injury to her privacy interests as well. A recent data breach matter in this district, *In re American Medical Collection Agency*, provides helpful guidance here. *Id.* In that case, the court noted that "a plaintiff in a data breach case can establish standing through allegations tending to show that his or her individual information has actually been accessed, disseminated, or misused by an unauthorized party." *2021 U.S. Dist. LEXIS 240360, [WL] at \*7* (citing *In re Horizon, 846 F.3d at 639*). This is because the access, dissemination, and misuse of one's private information is an intangible harm akin to "[a]n unauthorized disclosure of private information" and other common law privacy torts, and thus constitutes a sufficiently concrete injury for **[*18]** standing purposes. *2021 U.S. Dist. LEXIS 240360, [WL] at \*7, \*9* (citing *Ramirez, 141 S. Ct. at 2204* and *In re Horizon, 846 F.3d at 638*); *cf. In re Horizon, 846 F.3d at 638-39* ("[W]ith privacy torts, improper dissemination of information can itself constitute a cognizable injury."). Applying these principles, the court found that certain groups of plaintiffs had standing. One such group—Group I—had standing because "[t]he fraudulent charges" that these plaintiffs experienced as a result of the data breach "permit[ted] the inference that their specific information has been accessed and misused. Therefore, at a minimum, they have suffered the actionable intangible harm of the wrongful use and dissemination of their private information, like the interests protected by common law privacy torts." *2021 U.S. Dist. LEXIS 240360, [WL] at \*8* (citing *Ramirez, 141 S. Ct. at 2208*).

Similarly, the facts presented here give rise to the reasonable inference that Ms. Gaddy's PII was accessed without her authorization, disseminated, and misused. (Am. Compl. ¶¶ 22-25, 78). At the very least, then, it appears that Plaintiff Gaddy, like the Groups I plaintiffs, has suffered a sufficiently concrete intangible injury to her privacy due to the Data Breach. *See In re Am. Med. Collection Agency, 2021 U.S. Dist. LEXIS 240360, 2021 WL 5937742, at \*8*. As such, Plaintiff Gaddy has plausibly alleged an injury in fact.[3]

Defendant's primary standing argument with respect to Plaintiff Gaddy is **[*19]** that her injury is not "fairly traceable" to the Data Breach. (Def. Mot. 14-15); (Def. Reply 6-7). This argument is not well taken. The sensitive nature of the PII allegedly stolen, and the temporal proximity between the Data Breach and Ms. Gaddy's discovery of the unauthorized credit card permit the inference that information taken in the Data Breach was used to open the unauthorized credit card. Plaintiff Gaddy explicitly alleges as much. (Am. Compl. ¶ 23) ("Because the card was not opened until after the Data Breach occurred, it can be reasonably assumed Ms. Gaddy's PII was taken in the Data Breach and then used to open the card."). At this stage of the proceedings, construing all inferences in Plaintiffs' favor, this is sufficient to establish standing.

### 3. State-specific Subclasses

Having concluded that Plaintiffs O'Bryant and Ryan lack standing, we must dismiss the Pennsylvania and Maryland subclasses as well. "[W]hen it comes to state-specific (sub)classes, the court may 'dismiss the state subclasses of which no Plaintiff is a member' at the

---

[3] As we have determined that Plaintiff Gaddy has experienced an injury in fact based on the actual misuse of her PII, we need not address Plaintiff Gaddy's other theories of standing. *Cf. Attias v. Carefirst, Inc., 865 F.3d 620, 626 n.2, 431 U.S. App. D.C. 273 (D.C. Cir. 2017)* ("Because we conclude that all plaintiffs...have standing to sue CareFirst based on their heightened risk of future identity theft, we need not address the Tringlers' separate argument as to *past* identity theft.").

pleading stage." *In re Allergan BIOCELL Textured Breast Implant Prod. Liab. Litig., 537 F. Supp. 3d 679, 753 (D.N.J. 2021)* (citation omitted). Plaintiff Gaddy, a representative of the New Jersey subclass, is the only remaining named Plaintiff **[*20]** in this action. As such, the Pennsylvania and Maryland subclasses must be dismissed. Consequently, we also dismiss Counts Four and Six, in which Plaintiffs attempt to bring claims unique to the Pennsylvania and Maryland subclasses, respectively. (Am. Compl. ¶¶ 163-71, 181-89); see *In re Allergan Biocell, 537 F. Supp. 3d at 754* ("[T]he named Plaintiffs do not have ... standing as class representatives to assert claims for the state-specific subclasses of which they are not members.").

### B. Substantive Claims

Defendant also moves to dismiss each of Plaintiffs' common law claims pursuant to *Rule 12(b)(6)*. As Plaintiff Gaddy is the sole remaining named Plaintiff in this action, New Jersey law applies to Plaintiffs' common law claims. *In re Allergan Biocell, 537 F. Supp. 3d at 753* ("[N]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury.").

### 1. Contract Claims

#### i. Breach of Contract

Plaintiffs point to two provisions of Defendant's employee handbook, entitled "Preserve Confidentiality" and "Confidentiality of Personnel Records" (together "the confidentiality provisions") that they claim Defendant breached by not properly securing Plaintiffs' PII. (Am. Compl. ¶¶ 231-44, Ex. 3). Plaintiffs contend that the handbook **[*21]** was part of a larger "employment agreement" between the parties. (Am. Compl. ¶¶ 233-38); (Pl. Opp'n Br. 14). Defendant urges the Court to dismiss Plaintiffs' breach of contract claim because there was no express employment agreement between Plaintiffs and Defendant, as Plaintiffs were at-will employees. (Def. Mot. 22-23). Defendant stresses that "nothing in L&F's employee handbooks from 2013 and 2015 establishes a contract." (Def. Mot. 24).

"To prevail on a breach of contract claim under New Jersey law, a plaintiff must establish three elements: (1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Mid-Am. Salt, LLC v. Morris Cty. Coop. Pricing Council, 964 F.3d 218, 226 (3d Cir. 2020)* (citation omitted). "A valid contract...requires 'mutual assent, consideration, legality of the object of the contract, capacity of the parties, and formulation of memorialization.'" *Webster v. Dollar Gen., Inc., 197 F. Supp. 3d 692, 704 (D.N.J. 2016)* (citation omitted). Further, "[a] plaintiff must identify the specific contract or provision that was allegedly breached." *Mo v. JPMorgan Chase Bank, N.A., No. CV2014387, 2022 U.S. Dist. LEXIS 28282, 2022 WL 475814, at *4 (D.N.J. Feb. 15, 2022)* (quoting *Barker v. Our Lady of Mt. Carmel Sch., Civ. No. 12-4308, 2016 U.S. Dist. LEXIS 118067, 2016 WL 4571388, at *15 (D.N.J. Sept. 1, 2016)*).

Plaintiffs' have failed to state a claim for breach of contract. Even presuming, without deciding, that a valid **[*22]** employment agreement existed here, the handbook is clearly not part of any such agreement. The employee handbook explicitly states that "[t]his handbook is not a contract of employment."[4] (Def. Mot., Ex. 1 at 1). This disclaimer, featured in bold on the first page of the handbook, (*id.*), makes clear that Defendant did not intend for the handbook to impose any contractual duties on Defendant. Plaintiffs cannot show mutual assent or a "meeting of the minds" to include the handbook's provisions, including the confidentiality provisions, in the alleged employment agreement. *Read v. Profeta, 397 F. Supp. 3d 597, 626 (D.N.J. 2019)* ("The requirements [*sic*] of a meeting of the minds is an essential element to the valid consummation of any contract." (citation and quotation marks omitted)). Simply put, the handbook's confidentiality provisions are not part of a contract and therefore cannot form the basis for Plaintiffs' breach of contract claim. And as Plaintiffs do not identify any other provisions of the "employment agreement" that Defendant allegedly breached, Plaintiffs cannot sustain a claim for breach of contract.

#### ii. Breach of Implied Contract

---

[4] The Court may properly consider the employee handbook attached as exhibits to Defendant's motion to dismiss, (Def. Mot., Exs. 1 and 2), as the handbook is "integral to or explicitly relied upon in the complaint[.]" *Doe v. Univ. of the Scis., 961 F.3d 203, 208 (3d Cir. 2020)* (citing *In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)*).

As best the Court can discern, Plaintiffs seemingly advance two related theories with respect to **[*23]** their breach of implied contract claim. First, it appears Plaintiffs contend that a promise to protect their PII can be implied from the fact that Defendant required Plaintiffs to provide this sensitive information as a condition of Plaintiffs' employment. (Am. Compl. ¶¶ 148-53). Second, they assert that an implied contractual duty to protect their PII can be inferred from the two confidentiality provisions discussed *supra* Section III(B)(1)(i). (*Id.* ¶¶ 154-56). Plaintiffs claim that Defendant breached this implied contractual duty. (*Id.* ¶ 159).

"The distinction between express and implied contracts rests on alternative methods of contract formation. Contracts are 'express' when the parties state their terms and 'implied' when the parties do not state their terms." *Baer v. Chase, 392 F.3d 609, 616 (3d Cir. 2004)*; *Duffy v. Charles Schwab & Co., 123 F. Supp. 2d 802, 816-17 (D.N.J. 2000)* ("The only difference between an implied-in-fact contract and an express contract is that the parties' agreement has been manifested by conduct instead of words."). "Like express contracts, contracts implied in fact depend on 'mutual agreement and intent to promise.'" *Read, 397 F. Supp. 3d at 626-27* (quoting *Saint Barnabas Med. Ctr. v. Cnty. of Essex, 111 N.J. 67, 77, 543 A.2d 34 (1988)*).

As to Plaintiffs' first theory, "courts have consistently held that the fact that a defendant required plaintiffs to provide personal information **[*24]** does not alone support the inference that the parties agreed for the defendant to secure this information." *In re Am. Med. Collection Agency, 2021 U.S. Dist. LEXIS 240360, 2021 WL 5937742, at *19*; *Longenecker-Wells v. Benecard Servs. Inc, 658 F. App'x 659, 662 (3d Cir. 2016)* (finding the fact that the defendant "required Plaintiffs' personal information as a prerequisite to employment...alone did not create a contractual promise to safeguard that information, especially from third party hackers"). *But see*, *Mackey v. Belden, Inc., No. 4:21-CV-00149-JAR, 2021 U.S. Dist. LEXIS 145000, 2021 WL 3363174, at *9 (E.D. Mo. Aug. 3, 2021)* (collecting cases).

Instead, courts in the Third Circuit have generally required plaintiffs in data breach cases to identify "company-specific documents or policies from which one could infer an implied contractual duty to protect Plaintiffs' information." *Compare Longenecker-Wells, 658 F. App'x at 662* with *Enslin v. The Coca-Cola Co., 136 F. Supp. 3d 654, 675 (E.D. Pa. 2015)*, aff'd sub nom. *Enslin v. Coca-Cola Co., 739 F. App'x 91 (3d Cir. 2018)*. Plaintiffs do not contest this point. (Pl. Opp'n Br. 14) ("[T]he standard set forth by the *Longenecker-Wells* Court is whether one can infer from company-specific documents or policies that an implied contractual duty existed to protect Plaintiffs' information."). They argue that the handbook's confidentiality provisions satisfy this requirement. (*Id.* at 12-13).

We are not persuaded that an implicit contractual duty to protect Plaintiffs' PII can be inferred from the cited confidentiality provisions. First, the "Preserve Confidentiality" **[*25]** provision provides, in relevant part:

> Confidential information about Long & Foster, its employees, customers and suppliers that is acquired by an employee through his or her employment must be held in the strictest confidence. It is to be used solely for corporate purposes and never for personal gain by the employee, and may not be used to compete with Long & Foster. ... Confidential information may not be disclosed to persons outside the Company unless its disclosure is required by law or has been specifically authorized in writing. Confidential information obtained by an employee must not be disclosed to any other employee...

(Am. Compl., Ex. 3). This provision clearly imposes a duty on *employees* not to disclose confidential information gained in the course of their employment to third parties. *See* (*id.*) ("Your role in privacy protection is critical."). Moreover, the provision deals with the *disclosure* of confidential information, not the protection of information against cyber theft.

Likewise, the second provision, entitled "Confidentiality of Personnel Records," deals with the *release* of employee PII to outside sources:

> Long & Foster respects the confidentiality of all employee personnel **[*26]** information and releases information only in accordance with the following guidelines ... Confidential personnel information, other than what is noted above, is not released to outside sources unless required by statute or an appropriate court order, legal process, subpoena, or search warrant.

(*Id.*) From its plain language, this provision also deals with the *intentional disclosure* of employee PII by Defendant to third parties. It does not discuss the protection of employee PII against theft or even cybersecurity measures generally. In addition, the statement that "Long & Foster respects the

confidentiality of all employee personal information" is too vague to show an implicit agreement to secure employee PII. Cf. Read, 397 F. Supp. 3d at 626 ("An implied-in-fact contract is unenforceable for vagueness when its terms are too indefinite to allow a court to determine with reasonable certainty what each party has promised to do." (citation and quotation marks omitted)).

In short, neither provision gives rise to a plausible inference that Long & Foster implicitly promised to ward against the *theft* of Plaintiffs' PII by hackers. Plaintiffs' have not identified any other policies or conduct from which the Court could **[*27]** infer such an implied contractual duty. Therefore, we dismiss Plaintiffs' breach of implied contract claim.

### iii. Breach of the Covenant of Good Faith and Fair Dealing

"[A]n implied covenant of good faith and fair dealing claim cannot stand absent an underlying express or implied contract." Taylor v. Lincare, Inc., No. CV 15-6284, 2016 U.S. Dist. LEXIS 91924, 2016 WL 3849852, at *11 (D.N.J. July 15, 2016) (citing Peter v. Vitran Exp., Inc., 2013 U.S. Dist. LEXIS 181497, 2013 WL 6859843, at *2 (D.N.J. Dec. 30, 2013)). As we have concluded there was no underlying express or implied contract here, we dismiss Plaintiffs' claim for breach of an implied covenant of good faith and fair dealing without prejudice.

### 2. New Jersey Consumer Fraud Act

Defendant moves to dismiss Plaintiffs' New Jersey Consumer Fraud Act ("NJCFA") claim on the grounds that Plaintiffs are Defendant's employees, not consumers of Defendant's goods or services. (Def. Mot. 28); (Def. Reply 9). The NJCFA provides, in pertinent part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate or with the subsequent performance **[*28]** of such person as aforesaid...

N.J.S.A. § 56:8-2.

To sue under the NJCFA, a plaintiff must be a "consumer" of the defendant's goods or services. Conte Bros. Auto. v. Quaker State-Slick 50, Inc., 992 F. Supp. 709, 716 (D.N.J. 1998), aff'd, 165 F.3d 221 (3d Cir. 1998) ("It is well-settled law that one must be a 'consumer' in order to sue under [the NJCFA]...."); World Express & Connection, Inc. v. Crocus Invs., LLC, No. 15-8126, 2017 U.S. Dist. LEXIS 166790, 2017 WL 4516465, at *4 (D.N.J. Oct. 10, 2017) ("It is well established that one must be a 'consumer' to have standing to sue under the statute.").

Plaintiffs do not dispute that only consumers can bring claims under the NJCFA. Nonetheless, Plaintiffs assert that they have stated a claim under the NJCFA by pleading that Defendant "violated the NJ CFA by its misrepresentation of material facts related to the advertisement of their services (e.g., the offer of employment), including that it would maintain adequate data privacy and security practices and procedures to safeguard" Plaintiffs' PII. (Pl. Opp'n Br. 17); (Am. Compl. ¶ 174).

Plaintiffs' argument is meritless. Plaintiffs cite no authority that suggests an employee is a "consumer" of their employer's services under the NJCFA. Notably, "[t]he CFA 'is not intended to cover every transaction that occurs in the marketplace[.]'" Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 514 (3d Cir. 2006) (quoting Arc Networks, Inc. v. Gold Phone Card Co., 333 N.J. Super. 587, 756 A.2d 636 (2000)). Indeed, "[t]he entire thrust of the [NJCFA] is pointed to products and services sold to consumers in the popular **[*29]** sense." Id. (alterations in original); Twin Cap. Partners, LLC v. Wickstrom, No. 20-2869, 2021 U.S. Dist. LEXIS 188867, 2021 WL 4482835, at *3 (D.N.J. Sept. 30, 2021) ("New Jersey courts have repeatedly emphasized that 'the CFA seeks to protect consumers who purchase goods or services generally sold to the public at large.'" (quoting Cetel, 460 F.3d at 514)). Benefits offered by an employer to prospective employees are not services sold to consumers at large. As such, Plaintiffs' NJCFA claim must be dismissed.

### 3. Bailment

Next, Defendant moves to dismiss Plaintiffs' bailment claim. In New Jersey, "[t]he elements of 'bailment' are delivery of personal property by one person to another in trust for a specific purpose, acceptance of such

delivery, and express or implied agreement to carry out the trust and return the property to the bailor." *Pisack v. B & C Towing, Inc., 240 N.J. 360, 380, 222 A.3d 693 (2020)* (quoting *Mattson v. Aetna Life Ins. Co., 124 F. Supp. 3d 381, 393 (D.N.J. 2015)*). "[F]or a bailment to arise, the bailor must have 'possession and primary control' over the chattel." *LaPlace v. Briere, 404 N.J. Super. 585, 598, 962 A.2d 1139 (App. Div. 2009)* (citation omitted).

Plaintiffs have failed to state a claim for bailment. Courts have consistently concluded that PII does not constitute "property" capable of sustaining a bailment claim in similar data breach actions. *E.g., Enslin, 136 F. Supp. 3d at 679* (concluding that an employee's PII was not "property" or "personalty" sufficient to support a claim for bailment under Pennsylvania law) (collecting cases); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig., 903 F. Supp. 2d 942, 974 (S.D. Cal. 2012)* ("[T]he **[*30]** Court is hard pressed to conceive of how Plaintiffs' Personal Information could be construed to be personal property so that Plaintiffs somehow "delivered" this property to Sony and then expected it be returned."). We agree.

Even if Plaintiffs' data did constitute "property" for bailment purposes, there is no evidence of an agreement requiring Defendant to return Plaintiffs' data. Plaintiffs provide no facts to support their assertion that Defendant "understood that it had a duty to account for, return, and/or destroy the PII to it upon request." (Am. Compl. ¶ 225). Further, any suggestion that Defendant was under a duty to return Plaintiffs' PII is nonsensical. Plaintiffs indisputably maintained "possession" of their PII even after allegedly "delivering" it to Defendant. *See Galaria v. Nationwide Mut. Ins. Co., No. 2:13-CV-118, 2017 U.S. Dist. LEXIS 180167, 2017 WL 4918634, at *2 (S.D. Ohio Oct. 31, 2017)*, report and recommendation adopted, *No. 2:13-CV-118, 2017 U.S. Dist. LEXIS 205304, 2017 WL 6375803 (S.D. Ohio Dec. 13, 2017)* ("[Plaintiffs] retained their personal identifiers and continued to use them throughout the period of the alleged bailment. They have not alleged, and could not allege, that they expected Defendant to return the data because they were never without their personal identifiers."). Accordingly, Plaintiffs' bailment claim is **[*31]** dismissed with prejudice.

### 4. Breach of Confidence

Defendant moves to dismiss Plaintiffs' breach of confidence claim because Plaintiffs' information was stolen by third parties, not disclosed by Long & Foster. (Def. Mot. 32). "[A] breach of confidence involves 'the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship.'" *Kamal v. J. Crew Grp., Inc., 918 F.3d 102, 114 (3d Cir. 2019)* (quoting Alan B. Vickery, Note, *Breach of Confidence: An Emerging Tort*, *82 Colum. L. Rev. 1426, 1455 (1982)*).

As Defendant notes, a Florida district court recently evaluated a similar breach of confidence claim in data breach case. *In re Brinker Data Incident Litig., No. 3:18-CV-686-J-32MCR, 2020 U.S. Dist. LEXIS 247918, 2020 WL 691848, at *22 (M.D. Fla. Jan. 27, 2020)* (unpublished). The court found:

> Whether a special relationship is required for the tort breach of confidence is immaterial here because [the defendant] did not disclose Plaintiffs' information. According to Black's Law Dictionary, "disclosure" is "[t]he act or process of making known something that was previously unknown." ... But [the defendant] did not do any act that made Plaintiffs' information known—the information was stolen by third-parties. Even assuming, arguendo, that [the defendant's] inadequate security facilitated the theft, such a claim would lie in negligence not breach **[*32]** of confidence. Simply put, Brinker made no disclosure, thus, this count is due to be dismissed.

*Id.* (internal citation omitted).

District courts in Georgia and California have recently endorsed the *Brinker* court's reasoning, dismissing breach of confidence claims in data breach cases where, as here, third party hackers stole the plaintiffs' information from the defendant's server. *In re Ambry Genetics Data Breach Litig., No. SACV2000791, 567 F. Supp. 3d 1130, 2021 U.S. Dist. LEXIS 204358, 2021 WL 4891610, at *8 (C.D. Cal. Oct. 18, 2021)* ("Plaintiffs do not allege that Defendants affirmatively shared any information or performed any act that gave hackers information. Since Defendants made no 'disclosure' of Plaintiffs' confidential information, they cannot be held liable on a claim for breach of confidence."); *Purvis v. Aveanna Healthcare, LLC, No. 1:20-CV-0227, 563 F. Supp. 3d 1360, 2021 U.S. Dist. LEXIS 218300, 2021 WL 5230753, at *12 (N.D. Ga. Sept. 27, 2021)* (same).

We too are persuaded by the *Brinker* court's logic. Here, as in *Brinker*, hackers infiltrated Defendant's system that stored Plaintiffs' PII. (Am. Compl. ¶ 57). Plaintiffs do not

assert, nor can they, that Defendant affirmatively disclosed—intentionally or accidentally—Plaintiff's PII to the hackers or anyone else. To find otherwise would require us to stretch the plain meaning of the word "disclosure." Accord *In re Brinker, 2020 U.S. Dist. LEXIS 247918, 2020 WL 691848, at \*22*. To the extent that Defendant failed to properly secure Plaintiffs' PII, the remedy is a negligence claim. *Id.* Accordingly, we dismiss Plaintiffs' **[\*33]** breach of confidence claim with prejudice.

### 5. Unjust Enrichment

In the Amended Complaint, Plaintiffs allege that they "conferred a monetary benefit upon Defendant in the form of their employment with Defendant" and that Long & Foster "knowingly and deliberately enriched itself by saving the costs it reasonably and contractually should have expended on data security measures to secure Plaintiffs' and Class members' PII." (Am. Compl. ¶¶ 136, 138). Defendant contends that Plaintiffs have failed to state a claim for unjust enrichment because Plaintiffs were compensated for their employment and "fail to allege that L&F benefited from the collection and retention of their data." (Def. Mot. 36). We agree with Defendant.

"Under New Jersey law, to prove a claim for unjust enrichment, 'a party must demonstrate that the opposing party received a benefit and that retention of that benefit without payment would be unjust.'" *China Falcon Flying Ltd. v. Dassault Falcon Jet Corp., 329 F. Supp. 3d 56, 77 (D.N.J. 2018)* (quoting *Thieme v. Aucoin-Thieme, 227 N.J. 269, 151 A.3d 545 (2016)*). Plaintiffs must also show that they "expected remuneration from the defendant at the time [they] performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant...." *Id.* Importantly, a party "cannot be held liable for unjust enrichment **[\*34]** when he received no benefit." *Amgro, Inc. v. Lincoln Gen. Ins. Co., 361 F. App'x 338, 346 (3d Cir. 2010)*.

As an initial matter, Plaintiffs' "cost-saving" theory falls flat. Any financial benefit that Long & Foster enjoyed due to alleged "cost-saving" on data security measures was not a benefit conferred *by Plaintiffs* for which Plaintiffs could reasonably expect remuneration. *See Snyder v. Farnam Companies, Inc., 792 F. Supp. 2d 712, 724 (D.N.J. 2011)* ("[A] plaintiff must confer a benefit on the defendant to support an unjust enrichment claim[.]"). The only conceivable benefit Plaintiffs conferred upon Defendant was the services Plaintiffs rendered as employees, (Am. Comp. ¶ 136), for which they were presumably compensated with a salary and benefits. We do not find it plausible, based on the facts alleged, that Plaintiffs provided their services as employees to Defendant *in exchange for* protection of their PII data.

We recognize that victims of a data breach may be able to state a claim for unjust enrichment "in situations where businesses commoditize or receive an independent pecuniary benefit from holding the Personal Information." *2021 U.S. Dist. LEXIS 240360, 2021 WL 5937742, at \*18*; *e.g., In re Cap. One Consumer Data Sec. Breach Litig., 488 F. Supp. 3d 374, 413 (E.D. Va. 2020)* ("Amazon (charging Capital One for server use) profited from its storage and retention of Plaintiffs' PII, uploaded to AWS via Plaintiffs' relationship with Capital One....Retaining these **[\*35]** profits without adequately securing the data would be 'unjust.'"). But that is not the case at hand. Plaintiffs do not, and cannot, plausibly allege that Defendant derived any independent benefit from holding Plaintiffs' PII.

Here, Plaintiffs provided their personal data to Long & Foster as a condition of their employment. (Am. Compl. ¶¶ 4, 109). Plaintiffs did not confer a benefit on Defendant by providing Defendant with their personal information; Plaintiffs do not show that Defendant had any use for or derived any value from Plaintiffs' PII. As such, Plaintiffs cannot sustain a claim for unjust enrichment.[5] *In re Am. Med. Collection Agency, 2021*

---

[5] Plaintiffs cite to several out of circuit cases to show that "unjust enrichment claims in data breach cases have survived in other jurisdictions." (Pl. Opp'n Br. 22-23). None of these cases are binding on this court, nor are they persuasive. In several of the cited cases, the plaintiffs had alleged that they paid the defendant specifically to protect their personal information. *See Fero v. Excellus Health Plan, Inc., 236 F. Supp. 3d 735, 769 (W.D.N.Y. 2017)*, on reconsideration, *304 F. Supp. 3d 333 (W.D.N.Y. 2018)* ("Plaintiffs allege that they 'conferred a monetary benefit on Defendants in the form of premiums,' that a portion of those fees 'should have been used by Defendants ... to pay for the administrative costs of reasonable data privacy and security practices and procedures'...."); *In re Premera Blue Cross Customer Data Sec. Breach Litig., 198 F. Supp. 3d 1183, 1201 (D. Or. 2016)* ("Plaintiffs allege that they conferred a monetary benefit on Defendant in the form of fees paid for healthcare insurance, that a portion of these fees were supposed to be used by Defendant, in part, to pay for the administrative costs of data management and security, that Defendant did not use such fees to pay for the administrative costs of data management and security." (internal quotation marks omitted)); *In re: Cmty.*

U.S. Dist. LEXIS 240360, 2021 WL 5937742, at *18 ("[T]here is no such allegation that Defendants...receive any additional value from Plaintiffs Personal Information. For this reason, Plaintiffs have failed to state a claim for unjust enrichment.").

### 6. Negligence

Defendant moves to dismiss Plaintiffs' negligence claim, contending that Plaintiffs have failed to allege facts showing: (1) Defendant proximately caused Plaintiffs' injury, (Def. Mot. 36-37); and (2) actual damages stemming from the Data Breach, (*id.* at 37-38). Defendant also moves to dismiss Plaintiffs' claim that Defendant was negligent in failing to timely inform **[*36]** Plaintiffs about the Data Breach. They argue that Plaintiffs do not allege facts demonstrating breach of a duty or causation with respect to this "notification" theory of negligence. (*Id.* at 37).

"In New Jersey, as elsewhere, it is widely accepted that a negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." Minnesota Life Ins. Co. v. Cooke, No. 2:20-CV-14326, 2021 U.S. Dist. LEXIS 213801, 2021 WL 5122070, at *6 (D.N.J. Nov. 4, 2021) (quoting Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594, 59 A.3d 561 (2013)).

Defendant's proximate cause argument is unavailing. Defendant asserts that, because Plaintiffs are unable to allege facts to show that their PII was actually accessed in the breach, Plaintiffs cannot show Defendant's actions proximately caused their injury. (Def. Mot. 36); (Def. Reply 15). We disagree. Plaintiff Gaddy's allegation that an unauthorized credit card was opened in her name mere months after the Breach supports a reasonable inference that her PII was accessed by the hackers during the August 2020 attack. (Am. Compl. ¶ 22). Plaintiffs also allege that Defendant's "failure to implement and maintain reasonable security practices" to protect Plaintiffs' PII has caused, *inter alia*, "the publication and/or theft of their PII...." (*Id.* ¶ 130). Together, **[*37]** these allegations are sufficient to show proximate causation at the motion to dismiss stage, where all reasonable inferences must be drawn in Plaintiffs' favor. *See* In re Equifax, Inc., Customer Data Sec. Breach Litig., 362 F. Supp. 3d 1295, 1318 (N.D. Ga. 2019) ("Many of the Plaintiffs have alleged in the Complaint that they suffered some form of identity theft or other fraudulent activity as a result of the Data Breach. Such an allegation is sufficient at the pleading stage to establish that the Data Breach was the proximate cause of this harm.").

Nor are we persuaded by Defendant's actual damages argument. Defendants contend that Plaintiffs "allege merely a risk of possible future consequences[,]" which is "insufficient to state a claim for negligence." (Def. Mot. 38). As noted above, however, Plaintiffs' allegations permit a reasonable inference that hackers accessed and subsequently used Plaintiff Gaddy's PII to open an unauthorized credit card, causing her harm. (Am. Compl. ¶¶ 130-32). This is sufficient at this early stage of the case. *See* In re Am. Med. Collection Agency, 2021 U.S. Dist. LEXIS 240360, 2021 WL 5937742, at *16 ("Plaintiffs...adequately alleged that the hackers accessed their Personal Information, which has resulted in either tangible or intangible harm. These allegations are sufficient to satisfy the damages prong of Plaintiffs' negligence **[*38]** claim at this stage.").

We turn now to Plaintiffs' allegation that Defendants failed to timely notify Plaintiffs about the data breach, which "prevented Plaintiffs and Class members from taking meaningful, proactive steps to securing their PII and mitigating damages." (Am. Compl. ¶ 126). Without deciding whether Long & Foster had, and breached, a duty to timely disclose that their server had been hacked, we find that Plaintiffs' allegations are insufficient to show that Defendant's purported delay in notifying Plaintiffs of the Data Breach caused Plaintiffs' injuries. All of Plaintiffs' alleged injuries stem from the data breach itself, not the delayed notification. It is unclear how any alleged injuries, (*id.* ¶¶ 130-31), could have been mitigated had Defendant notified Plaintiffs of the breach sooner.[6] As we cannot conclude that

---

Health Sys., Inc., No. 15-222, 2016 U.S. Dist. LEXIS 123030, 2016 WL 4732630, at *24 (N.D. Ala. Sept. 12, 2016) ("In the unjust enrichment claim, ... the Plaintiffs alleged that the Defendants received payment from Plaintiffs that encompassed services for protecting Plaintiffs' confidential patient data, and that Defendants' retention of the benefits of those payments was unjust in light of their failure to protect the data and of the subsequent data breach."). Plaintiffs can make no such allegation here.

[6] Other courts have dismissed negligence claims in data breach cases that were based on similar delayed notification theories. *E.g.*, Savidge v. Pharm-Save, Inc., No. 3:17-CV-00186-TBR, 2017 U.S. Dist. LEXIS 197635, 2017 WL 5986972, at *8 (W.D. Ky. Dec. 1, 2017) ("Plaintiffs do not allege what kind of 'potentially avoidable harm' they experienced that could have been mitigated had they learned

Defendants' purported failure to timely notify Plaintiffs of the breach *caused* Plaintiffs to suffer a cognizable injury, Plaintiffs' negligence claim based on the alleged delay in notification must be dismissed.

### 7. Declaratory Judgment Act

Last, Defendant asserts that Plaintiffs' claim under the Declaratory Judgment Act ("DJA") must be dismissed because "relief under the DJA is a remedy **[*39]** for an underlying cause of action, not a standalone cause of action." (Def. Mot. 39).

The Declaratory Judgment Act provides "[i]n a case of actual controversy within its jurisdiction...any Court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). As Defendant notes, the Act "creates a remedy, not rights." Malhan v. Sec'y United States Dep't of State, 938 F.3d 453, 457 n.3 (3d Cir. 2019); In re AZEK Bldg. Prod., Inc., Mktg. & Sales Pracs. Litig., 82 F. Supp. 3d 608, 624-25 (D.N.J. 2015) ("The Declaratory Judgment Act is a procedural vehicle that creates a form of relief; it does not create a cause of action courts may be compelled to enforce.").

Here, Plaintiffs "seek a declaration that (1) Defendant's existing security measures do not comply with its contractual obligations and duties of care to provide adequate security, and (2) to comply with its contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures...." (Am. Compl. ¶ 251). Contrary to Defendant's suggestion, it appears that Plaintiffs' DJA claim is not a standalone cause of action but instead connected to Plaintiffs' breach of contract and negligence claims. As Plaintiffs have failed to show that Defendant has a contractual duty to protect **[*40]** Plaintiffs' PII, we dismiss their DJA claim to the extent it is based on a breach of contract theory. As Plaintiffs have stated a claim for negligence, however, we will allow Plaintiffs to proceed with their DJA claim to the extent it is premised on a negligence cause of action.

### V. CONCLUSION

For the reasons contained herein, Defendant's Motion to Dismiss (ECF No. 16) is **GRANTED in part** and **DENIED in part**. An Order shall issue.

Dated: 03/15/2022

/s/ Robert B. Kugler

ROBERT B. KUGLER

United States District Judge

### ORDER

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 16). For the reasons stated in the accompanying Opinion of this date,

**IT IS HEREBY ORDERED** that Defendant's motion (ECF No. 16) is **GRANTED in part** and **DENIED in part**. Count I (negligence)[1] and Count XI (declaratory relief) of the Amended Complaint (ECF No. 11) remain. Count III (breach of implied contract), Count IV (violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law), Count V (violation of New Jersey's Consumer Fraud Act), Count VI (violation of Maryland's Consumer Protection Act), Count VII (breach of the **[*41]** covenant of good faith and fair dealing), and Count X (breach of contract) are **DISMISSED WITHOUT PREJUDICE**. Count II (unjust enrichment), Count VIII (breach of confidence), and Count IX (bailment) are **DISMISSED WITH PREJUDICE**; and

---

of the breach earlier. This mere allegation of harm, without accompanying factual allegations, is insufficient to warrant an inference that the alleged delay in notifying Plaintiffs of the security breach caused them cognizable injury."); Corona v. Sony Pictures Ent., Inc., No. 14-CV-09600, 2015 U.S. Dist. LEXIS 85865, 2015 WL 3916744, at *5 (C.D. Cal. June 15, 2015) ("[L]ooking to the facts alleged, the Court finds implausible any argument that Sony's alleged delay in notification proximately caused any of the economic injury discussed above. These injuries fail to constitute incremental harm suffered by Plaintiffs as a result of any delay."); In re Sony Gaming Networks & Customer Data Sec. Breach Litig., 996 F. Supp. 2d 942, 965 (S.D. Cal. 2014) ("[E]ven though the Court finds Plaintiffs may have alleged a brief delay in the time period between the intrusion and when Sony notified consumers of the intrusion, the Court finds Plaintiffs have failed to allege that their injuries...were proximately caused by Sony's alleged untimely delay.").

[1] However, Count I (negligence) is dismissed without prejudice to the extent it is based on a delayed notification theory.

**IT IS FURTHER ORDERED** that named Plaintiff William O'Bryant and named Plaintiff Shawn Marie Ryan are **DISMISSED** from the instant matter. The Maryland and Pennsylvania subclasses are likewise **DISMISSED** from this action.

Dated: 03/15/2022

/s/ Robert B. Kugler

ROBERT B. KUGLER

United States District Judge

**End of Document**