**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **LAURA MEDINA,** individually and on behalf of all others similarly situated, | Case No. 1:23-cv-00480-MN |
| Plaintiff, | |
| v. | CLASS ACTION |
| | JURY TRIAL DEMANDED |
| **ALBERTSON'S COMPANIES, INC.,** | |
| Defendant. | |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT[1]**

---

[1] Albertsons does not oppose the relief sought by this Motion for Preliminary Approval (the "Motion") and agrees that the Court should grant preliminary approval and allow notice to issue to the Settlement Class. By not opposing this relief, Albertsons does not concede the factual basis for any claim and denies liability. The language in this motion, including the description of proceedings, as well as legal and factual arguments, is Plaintiffs', and Albertsons may disagree with certain of those characterizations and descriptions.

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................... 1

PROCEDURAL HISTORY .......................................................................................................... 2

MATERIAL SETTLEMENT TERMS ......................................................................................... 3

    A.    The Settlement Class .............................................................................................. 3

    B.    Settlement Consideration ....................................................................................... 3

    C.    The Claims Administrator, Notice Program, and Claims Process ........................ 5

    D.    Funds Remaining After Distribution ..................................................................... 6

    E.    Opt-Out and Objection Procedures ....................................................................... 6

    F.    Release of Claims .................................................................................................. 7

    G.    Class Representative Service Awards; Class Counsel Attorneys' Fees and Costs .................................................................................................... 7

ARGUMENT ............................................................................................................................... 8

I.  THE PROPOSED SETLEMENT WARRANTS PRELIMINARY APPROVAL ................... 8

    A.    The Settlement Falls Within the "Range of Reason" ........................................... 8

        1.  The Proposed Settlement is the Product of Arm's Length Negotiations ............... 9

        2.  Plaintiffs' Counsel Engaged in Sufficient Investigation and Discovery to Make an Informed Judgment Concerning the Merits of Plaintiffs' Claims ........................ 10

        3.  The Proponents of the Settlement are Highly Experienced Data Breach Class Action Litigators. ............................................................................................... 10

        4.  The Settlement Amount is Fair, Reasonable, and Adequate in Light of the Risks of Further Litigation ............................................................................................ 11

    B.    Certification of the Settlement Class is Appropriate .......................................... 12

        1.  The Settlement Class Satisfies the Requirements of Rule 23(a) .......................... 12

        2.  The Settlement Class Also Satisfies the Requirements of Rule 23(b)(3) ............. 16

i

C.      The Court Should Approve the Proposed Notice Program .................................. 18

D.      A Final Approval Hearing Should be Scheduled ................................................. 19

CONCLUSION .................................................................................................................... 20

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*Alberto v. Albertsons Companies, Inc.*,
   C.A. No. 1:23-cv-00251-DKG (D. Idaho) .......................................................................... 1, 2,3

*Alves v. Main*,
   No. 01-cv-789 (DMC), 2012 WL 6043272 (D.N.J. Dec. 4, 2012) ......................................... 10

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 59 (1997) ...................................................................................................... 12, 13, 16

*Barnes v. Am. Tobacco Co.*,
   161 F.3d 127(3d Cir. 1998) ..................................................................................................... 14

*Gates v. Rohm & Haas Co.*,
   248 F.R.D. 434(E.D. Pa. 2008) .................................................................................................. 9

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
   525 Fed. Appx. 94, 100 (3d Cir. 2013) ................................................................................... 15

*In re Auto. Refinishing Paint Antitrust Litig.*,
   MDL No. 1426, 2004 U.S. Dist. LEXIS 29163 (E.D. Pa. May 11, 2004 ................................. 9

*In re Cmty. Bank of N. Virginia*,
   622 F.3d 275(3d Cir. 2010) ..................................................................................................... 15

*In re Flonase Antitrust Litig.*,
   284 F.R.D. 207(E.D. Pa. 2012 ................................................................................................ 15

*In re General Motors Corp.*,
   55 F.3d 768 (3d Cir. 1995 .......................................................................................................... 8

*In re General Motors Corp.*,
   55 F.3d 78655 F.3d 768,(1995 U.S. App. LEXIS 8815) ........................................................... 9

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ...................................................................................................... 9

*In re Heckmann Corp. Sec. Litig.*,
   No. 10–378–LPS–MPT, 2013 WL 2456104 (D. Del. June 6, 2013) ....................................... 17

*In re IGI Secs. Litig.*,
   122 F.R.D. 451(D.N.J. 1988 .................................................................................................... 14

*In re Ins. Brokerage Antitrust Litig.*,
  297 F.R.D.136, 2013 U.S. Dist. LEXIS 108042 , 86 Fed. R. Serv. 3d (Callaghan) 654, 2013 WL
  3956378 ................................................................................................................................ 14

*In re Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241(3d Cir. 2009 ............................................................................................... 18

*In re Nat'l Football League Players Concussion Injury Litig.*,
  775 F.3d 570 (3d Cir. 2014).............................................................................................. 8

*In re NFL Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016), 2016 U.S. App. LEXIS 6908............................................. 13, 16

*In re Processed Egg Prod. Antitrust Litig.*,
  2016 WL 3584632, (E.D. Pa. June 30, 2016) ................................................................. 16

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)……………………………………………………………..8

*Mehling v. New York Life Ins. Co.*,
  246 F.R.D. 467 (E.D. Pa. 2007)........................................................................................ 8

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950).......................................................................................................... 18

*Neal v. Casey*,
  43 F.3d 48  (3d Cir. 1994)................................................................................................. 14

*Reyes v. Netdeposit, LLC*,
  802 F.3d 469(3d Cir. 2015)............................................................................................... 13

*Rodriguez v. Nat'l City Bank*,
  726 F.3d 382(3rd Cir. 2013) ............................................................................................. 13

*Skeway v. China Nat. Gas, Inc.*,
  304 F.R.D. 467(D. Del. 2014)........................................................................................... 16

*Smith v. Prof'l Billing & Mgmt. Servs., Inc.*,
  No. 06-cv-4453 (JEI), 2007 WL 4191749, (D.N.J. Nov. 21, 2007............................... 8

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001).............................................................................................. 13

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ........................................................................................ 13,18

*Twigg v. Sears, Roebuck & Co.*,
    153 F.3d 1222 (11th Cir. 1998 ........................................................................ 18

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005). ......................................................................... 9

<u>Other Authorities</u>

MAN. FOR COMP. LIT., 4TH ("MCL") § 21.632 (4th ed. 2004) ........................................... 8, 12, 18

<u>Rules</u>

Fed. R. Civ. P. 23(a) .................................................................................. 12, 13, 15, 18

Fed. R. Civ. P. 23(a)(1) ............................................................................................. 13

Fed. R. Civ. P. 23(a)(2) ............................................................................................. 13

Fed. R. Civ. P. 23(a)(3) ............................................................................................. 14

Fed. R. Civ. P. 23(a)(4) ............................................................................................. 15

Fed. R. Civ. P. 23(b), ................................................................................................ 12

Fed. R. Civ. P. 23(b)(3)). .......................................................................... 12, 16, 17, 18

Fed. R. Civ. P. 23(e)(1)(B) ....................................................................................... 18

Fed. R. Civ. P. 23(e). .......................................................................................... 8, 19

Fed. R. Civ. P. 23(e)(2 ........................................................................................ 11, 18

**INTRODUCTION**

Plaintiff Laura Medina, joined by Maryelin Alberto[2] (collectively referred to herein as "Plaintiffs"), on behalf of approximately 33,000 other current and former employees of Defendant Albertson's Companies, Inc. ("Albertsons" or "Defendant"), allege that they had their highly sensitive personal information stolen from Defendant's computers by cybercriminals in a data security incident that occurred between December 22 and December 24, 2022 (the "Incident"). The personal information involved in the Incident includes names, dates of birth, and Social Security numbers (the "Private Information"). Plaintiff Laura Medina filed an action on May 1, 2023 in the United States District Court for the District of Delaware (the "*Medina* Action"), and Plaintiff Maryelin Alberto filed an action on May 17, 2023 in the United States District Court for the District of Idaho (*Alberto v. Albertsons Companies, Inc.*, C.A. No. 1:23-cv-00251-DKG (D. Idaho) the "*Alberto* Action") (together, the "Litigation"). The Litigation seeks to recover damages on behalf of a class of other similarly situated current and former Albertsons employees (the "Class Members"). Albertsons denies liability in both Actions. Under the proposed Settlement, which is memorialized in the Class Settlement Agreement and Release and associated exhibits attached as *Exhibit 1* to the Motion (the "Agreement" or "Settlement Agreement"), Albertsons will create a $750,000.00 non-reversionary cash Settlement Fund for the benefit of the Settlement Class.

The Settlement presented for the Court's consideration is fair, reasonable, and adequate. After deduction of any Court-awarded attorneys' fees and costs, Service Awards, and Settlement

---

[2] As discussed further herein, Maryelin Alberto is a plaintiff in an action she filed against Albertsons in May 2023 in the United States District Court for the District of Idaho, which also arises out of the December 2022 data security incident.  Both Medina and Alberto are parties to the Settlement Agreement and the Agreement resolves the claims asserted in this Action and in the *Alberto* Action.

Administration Costs, Settlement Class Members who submit valid Claims will receive significant consideration, including cash payments and up to three (3) years of credit monitoring. Plaintiffs and their counsel settled the Litigation with Albertsons following arm's length negotiations before an experienced data breach mediator, Robert A. Meyer, Esq., of JAMS. Proposed Class Counsel have considerable experience in data breach litigation and are keenly aware of the strengths and weaknesses of litigating the Actions. Notwithstanding their confidence in the merits of their claims, Plaintiffs recognize the challenges and risks inherent in litigation, trial, and appeals, including certification of any class, and Albertsons' various defenses as to standing, liability, and other affirmative defenses. The Settlement will also avoid further delay in providing relief to the Settlement Class and expensive and protracted litigation with uncertain results. In exchange for the above-referenced consideration, Plaintiffs and all Settlement Class Members will release Albertsons and the other Released Parties from the claims in the Litigation.

## PROCEDURAL HISTORY

Plaintiffs brought the Actions individually and on behalf of all persons whose Private Information was allegedly compromised and subject to unauthorized access and exfiltration, theft, or disclosure in the Incident. Plaintiff Laura Medina filed the *Medina* Action on May 1, 2023 in the United States District Court for the District of Delaware, while Plaintiff Maryelin Alberto filed the *Alberto* Action on May 17, 2023 in the United States District Court for the District of Idaho. Both the *Medina* Action and the *Alberto* Action seek to recover damages on behalf of a class of all individuals in the United States who were sent a notice of the Incident by Albertsons on or around April 21, 2023.

Albertsons filed motions to dismiss in both the *Medina* Action and the *Alberto* Action. While those motions were pending, and after a period of informal discovery and mutual exchange

of information, the Parties agreed to a formal mediation. *See* Joint Declaration of David Lietz, Mason Barney and Tyler Bean filed contemporaneously herewith ("Joint Dec."), ¶ 5**.** The *Alberto* Action was stayed pending completion of the mediation.  On October 20, 2023, the Settling Parties engaged in a full-day mediation before Robert A. Meyer, Esq. of JAMS. Joint Dec, ¶ 6. Mr. Meyer is a highly sought after and accomplished mediator with a plethora of experience mediating data breach cases. At the conclusion of the mediation, the Parties reached an agreement to resolve all claims arising from or related to the Incident. *Id*., ¶ 8. Subsequently, the Parties worked on preparing the Settlement Agreement, which they finalized on or about January 4, 2024. *Id*..  The *Alberto* Action remains stayed, and the Settling Parties agreed to use their best efforts to ensure that the *Alberto* Action remains stayed pending this Court's final approval of the Settlement Agreement.  Agreement ¶ 12.14.  Once final judgment has been entered in the *Medina* Action and the appeals period has exhausted, the *Alberto* Action will be dismissed with prejudice.  *Id.*

### MATERIAL SETTLEMENT TERMS

The following is a summary of the material terms of the Settlement Agreement.

### A.  The Settlement Class

The proposed Settlement establishes the following Settlement Class:

> All individuals in the United States who were sent a notice of the Incident by Albertsons on or around April 21, 2023.

Agreement ¶ 1.34. The Settlement Class excludes any judge presiding over this matter and any of their first-degree relatives, judicial staff, Albertsons' officers or directors, and persons who timely and validly request exclusion from the Settlement Class. *Id.*

### B.  Settlement Consideration

Pursuant to the Settlement, Albertsons has agreed to create a non-reversionary cash Settlement Fund in the amount of $750,000.00 for the benefit of the Settlement Class. The

Settlement Fund will be used to pay all Settlement Claims, Settlement Administration Costs, any Service Awards to Class Representatives awarded by the Court, and any attorneys' fees and costs awarded by the Court to Class Counsel. Agreement, ¶ 1.38. Settlement Class Members who submit a valid and timely Claim Form may receive compensation for one or more of the following categories of loss resulting from the Incident: (1) a cash payment for ordinary losses up to $1,000.00, with such ordinary losses to include (i) out of pocket expenses incurred as a result of the Incident, (ii) fees for credit reports, credit monitoring, or other identity theft insurance products purchased between December 23, 2022 and the date of the Claims Deadline, and (iii) up to five (5) hours of lost time, at $25/hour; and (2) a cash payment for extraordinary losses up to $5,000. *Id.*, ¶ 2.3.1. Settlement Class Members who submit a valid and timely Claim Form may also elect three (3) years of credit monitoring. *Id.* Or, they may elect to receive an Alternative Cash Payment in the amount of $75 in lieu of all of the above-referenced Settlement benefits, subject to a *pro rata* adjustment (upwards or downwards) as set forth in Paragraph 2.10 of the Agreement after all expenses are paid from the Settlement Fund. *Id.*

In addition, Albertsons has agreed to meaningful Business Practice Commitments. *See* Agreement, ¶ 2.4. These Business Practice Commitments include revision of communications protocols and requirements; enhancement of contracts and notification requirements for third-party vendors; strengthening of associate education and awareness campaigns; deployment and configuration of modern machine-learning based email protection; maintenance of endpoint protection for Windows, Linux and critical assets; maintenance of security controls around identity management services; migration of sensitive edge data from non-centralized file servers to cloud; and the maturing of data security practices. *Id.* In the Settlement, Albertsons confirmed that all of these security measures have been implemented, and that all costs associated with the

4

implementation of these Business Practice Commitments will be borne by Albertsons separate and apart from the Settlement Fund. *Id*.

### C. The Claims Administrator, Notice Program, and Claims Process

The Parties have agreed to utilize Epiq as the third-party Claims Administrator to assist with the dissemination of Notice and for the implementation of the Claims process. Joint Dec., ¶ 43. Epiq is one of the nation's leading class action settlement administrators. *Id.*.

The Notice Program shall begin thirty (30) days after the entry of a Preliminary Approval Order, with the Claims Deadline to take place ninety (90) days after the Notice Program begins. Agreement, ¶¶ 1.8, 4.3(a). Albertsons will provide the Claims Administrator with the names and physical addresses for all Settlement Class members within five (5) days of the filing of the motion for preliminary approval. Agreement, ¶ 4.2.

The Notice Program includes the following Notices, subject to this Court's approval: (1) Short Notice, in postcard form, to be sent via first-class U.S. mail, postage prepaid, to all those Settlement Class members for which Albertsons provides a postal address (*see* Agreement, ¶ 4.3); (2) Long Notice available to Settlement Class members on the Settlement Website (*id.*, ¶ 1.9) ; and (3) a Reminder Notice to be sent to Settlement Class members in the event that, at thirty (30) days prior to the Claims Deadline, the Claims Rate is less than 3% of the Settlement Class (*id.*, ¶ 4.3(a)(v)); *see also* Agreement, Exs. B and C. For any Short Notice that has been mailed and later returned as undeliverable, the Claims Administrator shall re-mail the Short Notice to the forwarding address, if any, provided by the USPS on the face of the returned mail. *Id.*, ¶ 4.3(a)(iii).

In addition to the Short and Long Notices, the Claims Administrator will establish a toll-free number to answer frequently asked questions, as well as a Settlement Website for Settlement Class members to submit Claim Forms and/or to view other important information and documents,

including the Long Form Notice, Complaints, Motion for Preliminary Approval, and Preliminary Approval Order. *Id.*, ¶ 4.3(b).

The Notice Program is designed to provide members of the Settlement Class with important Settlement information and their rights thereunder, including a description of the material Settlement terms; how to access and submit a Claim Form; a date by which Settlement Class members may opt-out of the Settlement; a date by which Settlement Class members may object to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards; the Final Approval Hearing date; and information regarding the Settlement Website where Settlement Class members may access the Settlement Agreement and other important documents. Complete opt-out and objection requirements are listed in the Agreement, as well as in the Long Notice. *Id.*, ¶ 6.

### D.  Funds Remaining After Distribution

To the extent there are funds remaining in the Settlement Fund after accounting for the total cost of all valid and timely Claims, including any pro rata adjustments as referenced above, the remaining amount in the Settlement Fund shall be treated as residual funds and thereafter distributed to a mutually agreeable *cy pres* recipient – the National Cybersecurity Alliance. Agreement, ¶ 1.18.

### E.  Opt-Out and Objection Procedures

In accordance with the opt-out procedures detailed in the Long Notice and the Agreement, Settlement Class members who do not wish to participate in the Settlement may opt-out by the last day of the Opt-Out Period (sixty (60) days after the Notice Date). Agreement, ¶ 1.22. Written opt-out requests must be mailed to the address designated by the Claims Administrator. *Id.*, ¶ 5.1. Settlement Class Members who wish to object to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards must do so no later than the last day of the Objection

Period (sixty (60) days after the Notice Date). The Agreement and the Short and Long Notices set forth all objection requirements and instruct that objectors must send a written objection to the Claims Administrator at the address indicated in the Short and Long Notices that includes: (a) the objector's full name, address, telephone number, and email address (if any); (b) a clear and detailed written statement that identifies the basis of the specific objection that the Settlement Class Member asserts; (c) the identity of any counsel representing the objector; (d) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying that counsel; (e) a list of all other class action settlements that the objector has objected to in the previous ten (10) years; and (f) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (if any, and for duly authorized representatives evidence of appointment of same). *Id.*, ¶ 6.2.

### F.  Release of Claims

Plaintiffs and Settlement Class members who do not timely and validly opt out of the Settlement will be bound by the terms of the Settlement, including the release and discharge of the Released Claims against the Released Parties. Agreement, ¶ 8.

### G.  Class Representative Service Awards; Class Counsel Attorneys' Fees and Costs.

In recognition of the Class Representatives' time and effort expended in pursuing the Litigation and in fulfilling their obligations and responsibilities as Class Representatives, and of the relief conferred on all Settlement Class Members by the Settlement, proposed Class Counsel will ask the Court to approve a Service Award of up to $2,500.00 for each Class Representative, payable from the Settlement Fund. Agreement, ¶ 9.2.

In addition, Class Counsel may request attorney's fees not to exceed 33.33% of the Settlement Fund, or $250,000, and reasonable litigation costs not to exceed $25,000. *Id.*, ¶ 9.1.

The Notices will inform the Settlement Class that Class Counsel will be seeking such fees and costs. Notably, the discussion of attorneys' fees and costs and Service Awards did not take place until after the Parties agreed to all material Settlement terms. Joint Dec., ¶ 16.

**ARGUMENT**

I.     **THE PROPOSED SETLEMENT WARRANTS PRELIMINARY APPROVAL**

   A.  **The Settlement Falls Within the "Range of Reason"**

The Third Circuit has stated that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). Where, as here, the Parties propose to resolve the Litigation through a class-wide settlement, they must obtain the Court's approval. *See* Fed. R. Civ. P. 23(e). If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or present other obvious deficiencies, and appears to fall within the range of possible approval, the court should grant preliminary approval and direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement. *See In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 581-83 (3d Cir. 2014) (citing MAN. FOR COMP. LIT., 4TH ("MCL") § 21.632 (4th ed. 2004)).

A court's review for preliminary approval is less stringent than for final approval. *See Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, No. 06-cv-4453 (JEI), 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007); *see also In re General Motors Corp.*, 55 F.3d 768, 785 (3d Cir. 1995) (holding that the

8

"preliminary determination establishes an initial presumption of fairness"); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 444 n.7 (E.D. Pa. 2008) ("At the preliminary approval stage, however, the Court need not address [the Girsh] factors, as the standard for preliminary approval is far less demanding.").

Courts have applied an initial presumption of fairness where: (1) a proposed settlement was negotiated at arm's length; (2) there was sufficient discovery; and (3) counsel is experienced in similar litigation. *In re General Motors Corp.*, 55 F.3d at 786; *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001); *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 235 (D.N.J. 2005). As discussed below, each of these factors supports the preliminary approval of this Settlement and, as such, Plaintiffs respectfully request the Court take the first step in the settlement approval process and grant preliminary approval of the Settlement.

*1.   The Proposed Settlement is the Product of Arm's Length Negotiations*

District courts give great weight to the opinion and judgment of experienced counsel who conducted arm's-length negotiations. Settlements negotiated by experienced counsel that result from arm's length negotiations are entitled to deference. *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29163, at *6-7 (E.D. Pa. May 11, 2004). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

Here, the parties reached an agreement on all material terms after Albertsons filed motions to dismiss both class action complaints and weeks of negotiation, culminating with an all-day mediation on October 20, 2023 before experienced data breach mediator, Robert A. Meyer of JAMS. Joint Dec., ¶ 6. The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator like Mr. Meyer supports the conclusion that the Settlement was

achieved free of collusion, and merits preliminary approval. *See Alves v. Main*, No. 01-cv-789 (DMC), 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) (internal quotations omitted) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."). Because all negotiations regarding settlement in the Litigation have been conducted at arm's length, in good faith, and absolutely free of any collusion (Joint Dec., ¶ 24), this factor is satisfied in favor of the Court granting preliminary approval of the Settlement.

2.  *Plaintiffs' Counsel Engaged in Sufficient Investigation and Discovery to Make an Informed Judgment Concerning the Merits of Plaintiffs' Claims*

Plaintiffs' counsel have vigorously represented the Settlement Class and will continue to do so after Preliminary Approval and Final Approval. *See* Joint Dec., ¶ 25. To date, proposed Class Counsel have: (i) conducted a thorough pre-suit investigation that resulted in the preparation of multiple detailed complaints; (ii) gathered Plaintiffs' documents and relevant information relating to the Incident; (iii) requested and reviewed relevant information via informal discovery for mediation; (iv) prepared a detailed mediation statement; (v) participated in mediation and settlement discussions, achieving a very favorable Settlement for the Settlement Class; and (vi) negotiated a comprehensive Agreement that includes a robust Notice Program, well-crafted Notices and Claim Form, and an easy to understand Claims Process. Joint Dec., ¶ 17. Additionally, proposed Class Counsel have no conflicts of interest with the Settlement Class. Therefore, this factor supports preliminary approval of the Settlement.

3.  *The Proponents of the Settlement are Highly Experienced Data Breach Class Action Litigators.*

Here, the Settlement is the result of the Parties' arm's length negotiations by Plaintiffs' counsel and Albertsons' Counsel, who are all attorneys who are familiar with class action

litigation; particularly experienced in the litigation, certification, trial, and settlement of class actions, including data breach cases; and knowledgeable of the legal and factual issues at the center of the Litigation. Joint Dec., ¶ 22. This experience proved beneficial to Plaintiffs and the Settlement Class during negotiations. *Id.* Proposed Class Counsel conducted informal discovery prior to the mediation that enabled them to prepare for well-informed negotiations overseen by Mr. Meyer, culminating in the Settlement. *Id.*, ¶ 13. Thus, this factor is satisfied.

    4.   *The Settlement Amount is Fair, Reasonable, and Adequate in Light of the Risks of Further Litigation*

A preliminary review of the fairness and adequacy factors demonstrates that the Settlement warrants preliminary approval under Rule 23(e)(2). The Settlement was reached in the absence of collusion, and is the product of good faith, informed, and arm's length negotiations by competent counsel with the assistance of Mr. Meyer at mediation. Joint Dec., ¶ 24.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Proposed Class Counsel believe the claims asserted in the Litigation are meritorious and that Plaintiffs would prevail if the Litigation proceeded to trial. Joint Dec., ¶ 27. Albertsons denies liability, believes it acted in good faith and in compliance with the law, and that it would prevail in opposing class certification and on the merits at trial. *Id.* ¶ 31

Proposed Class Counsel are confident in the strength of Plaintiffs' claims in the Litigation. Joint Dec., ¶ 27. However, they are also pragmatic of the risks and challenges they face. *Id.* ¶ 28. There are uncertainties in litigating the cases through class certification, summary judgment, and trial. *Id.* Proposed Class Counsel are also aware of the risks inherent from any appeal and subsequent proceedings following a successful trial verdict. *Id.* Under the circumstances, proposed Class Counsel determined the Settlement outweighs the risks of continued litigation. *Id.* And even

if Plaintiffs and the Settlement Class ultimately prevailed at trial, recovery could be delayed for years by an appeal. This Settlement provides substantial relief to Settlement Class Members without further delay and avoids the risk of an adverse judgment at trial or on appeal. Thus, in proposed Class Counsel's experience and informed judgment, the Settlement represents an excellent recovery, and the Settlement benefits outweigh the risks and uncertainties of continued litigation, including, the risks, time, and expenses associated with completing a trial and any appellate review. *Id.*, ¶ 23.

**B. Certification of the Settlement Class is Appropriate.**

In granting preliminary settlement approval, the Court should also certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Courts have long acknowledged the propriety of a settlement class. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997). A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue. *See id*. at 593. As demonstrated below, the proposed Settlement Class satisfies all of the requirements of Rule 23(a) and Rule 23(b)(3). Certification of the proposed Settlement Class will allow notice of the Settlement to issue to inform Settlement Class members of the existence and terms of the Settlement, of their right to opt-out, of their right to object and be heard on its fairness, and of the date, time, and place of the Final Approval Hearing. *See* MCL §§ 21.632, 21.633 (2004). For the reasons set forth below, certification is appropriate and the Court should conclude that it is likely to certify the Settlement Class and approve the Settlement as fair, adequate, and reasonable.

*1. The Settlement Class Satisfies the Requirements of Rule 23(a)*

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder

of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Amchem*, 521 U.S. at 613. As discussed below, the proposed settlement class meets each of these requirements.

***Numerosity.*** Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Forty class members is generally considered sufficient to satisfy this element. *See Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. 2001). Here the numerosity requirement is plainly satisfied as there are approximately 33,000 Settlement Class members.

***Commonality.*** The second prong of Rule 23(a)—commonality—requires "consideration of whether there are 'questions of law or fact common to the class[.]'" *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015) (citing Fed. R. Civ. P. 23(a)(2)). The commonality requirement is satisfied if the claims have at least one significant issue common to the class. *See In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 427 (3d Cir. 2016). The court's focus must be "on whether the defendant's conduct [is] common as to all class members[.]" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). And that "bar is not a high one." *Reyes*, 802 F.3d at 486 (quoting *Rodriguez v. Nat'l City Bank*, 726 F.3d at 382 (3rd Cir. 2013)).

In this case, there are numerous common questions of law and fact centering on whether Albertsons observed unreasonably lax data security practices that led to the Data Incident, including but not limited to, whether Albertsons unlawfully lost or disclosed Plaintiffs' and Class Members' Private Information; whether Albertsons failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information

compromised in the Incident; whether Albertsons' data security systems prior to and during the Incident complied with applicable data security laws and regulations; whether Albertsons' data security systems prior to and during the Incident were consistent with industry standards; and whether Albertsons owed (and breached) a duty to Plaintiffs and Class Members to safeguard their Private Information. These questions are common to the Settlement Class and commonality is therefore satisfied. Joint Dec., ¶ 37.

*Typicality.* Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. Fed. R. Civ. P. 23(a)(3). "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Barnes v. Am. Tobacco Co*., 161 F.3d 127, 141 (3d Cir. 1998). "As with numerosity, the Third Circuit has 'set a low threshold' for satisfying typicality, holding that '[i]f the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established….'" *In re Ins. Brokerage Antitrust Litig*., 297 F.R.D. at 149 (alterations in original) (citation omitted). Moreover, the typicality analysis focuses on the conduct of the defendants, not that of the class representatives. *In re IGI Secs. Litig*., 122 F.R.D. 451, 456 (D.N.J. 1988). Thus, "[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (internal citation omitted).

Here, the Plaintiffs' and Class Members' claims all arise from the same Incident and same alleged course of conduct by Defendant. Plaintiffs allege that Defendant's conduct was uniform as to each Class Member, and all members of the proposed class seek to recover for the resulting injury based on the same legal theories. *See, e.g., In re Flonase Antitrust Litig*., 284 F.R.D. 207,

218 (E.D. Pa. 2012) (typicality requirement satisfied where plaintiffs and all members of the proposed class seek to recover for uniform conduct based upon the same legal theories). The typicality requirement is therefore satisfied.

*Adequacy.* The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining the adequacy of representation, the court should "'evaluate [both] the named plaintiffs' and … counsel's ability to fairly and adequately represent class interests.'" *Gotthelf v. Toyota Motor Sales, U.S.A., Inc*., 525 Fed. Appx. 94, 100-101 (3d Cir. 2013) (alterations in original; citation omitted)). In doing so, "the district court ensures that no conflict of interest exists between the named plaintiffs' claims and those asserted on behalf of the class, and inquires whether the named plaintiffs have the ability and incentive to vigorously represent the interests of the class." *Id.* at 101 (citing *In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 291 (3d Cir. 2010)).

Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Joint Dec., ¶ 40. Further, Plaintiffs and the Settlement Class are represented by qualified and competent counsel. *Id*., ¶ 41 Proposed Class Counsel are leaders in the data breach class action field and have extensive experience prosecuting complex class actions, which helped them to negotiate an outstanding Settlement for the Class in this case as a result of weeks of negotiations, pre-mediation discovery, and an intensive, successful full-day mediation session. *See Id*., ¶¶ 6, 13. Proposed Class Counsel has devoted substantial time and resources to the Litigation and resulting Settlement and will continue to do so. *Id.*, ¶ 42. Therefore, Plaintiffs and their counsel satisfy Rule 23(a)(4).

### 2.  The Settlement Class Also Satisfies the Requirements of Rule 23(b)(3)

Plaintiffs also seek certification of the Settlement Class pursuant to Rule 23(b)(3). A class action seeking an award of damages is appropriate under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Skeway v. China Nat. Gas, Inc*., 304 F.R.D. 467, 475 (D. Del. 2014) (quoting FED. R. CIV. P. 23(b)(3)). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 618.

### a.  Common legal and factual questions predominate individual ones.

Predominance is generally more demanding than commonality; however, the Third Circuit is "more inclined to find the predominance test met in the settlement context." *NFL Players*, 821 F.3d at 434 (citations omitted). This is because, "for purposes of inquiring into the predominance of questions of law and fact relevant to a settlement class, manageability issues that are of obvious concern for anticipated litigation consideration are not similarly relevant." *In re Processed Egg Prod. Antitrust Litig*., 2016 WL 3584632, at *8 (E.D. Pa. June 30, 2016).

Here, there are several common questions of law and fact that substantially outweigh any questions that may affect individual Settlement Class Members. For example, each Settlement Class member's relationship with Albertsons is the same or substantially similar in all relevant respects to other Class Members—the Plaintiffs and each Class Member are individuals who were sent notice of the Incident by Albertsons on or around April 21, 2023. Here also, the same alleged course of conduct by Defendant forms the basis of all Settlement Class Members' claims. As set forth above, there are numerous common issues relating to Defendant's liability at the core of the

Litigation, which predominate over any individualized issues. The predominance requirement of Rule 23(b)(3) is therefore satisfied.

b.   <u>A class action is superior to other methods of adjudication.</u>

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3). The superiority requirement is easily satisfied. Indeed, courts in the Third Circuit have concluded that the class action device is usually the superior method by which to redress injuries to a large number of individuals in light of, *e.g.*, the inefficiency of multiple lawsuits and the size of individual recoveries in comparison to the costs of litigations. *See, e.g., In re Heckmann Corp. Sec. Litig*., No. 10–378–LPS–MPT, 2013 WL 2456104, at *8 (D. Del. June 6, 2013) (superiority requirement "easily satisfied" in cases where there are large numbers of potential claimants who suffer damages too small to justify a suit against a large corporate defendant) (internal quotation marks omitted).

The Settlement Agreement and Notice Program provide members of the Settlement Class with the ability to obtain prompt, predictable, and certain relief, and there are well-defined administrative procedures to assure due process. This includes the right of any Class Member dissatisfied with the Settlement to object to it, or to exclude themselves. The Settlement would also relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against Defendant. And because the parties seek to resolve the Litigation through a settlement, any manageability issues that could have arisen at

17

trial are marginalized. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 302-303 (3d Cir. 2011); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 269 (3d Cir. 2009). Finally, the complexity of the claims asserted against Albertsons and the high cost of individualized litigation make it unlikely that the vast majority of Settlement Class members would be able to obtain relief without class certification.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

### C.  The Court Should Approve the Proposed Notice Program

Fed. R. Civ. P. 23(e)(1)(B) states: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* MCL, § 21.312 (listing relevant information).

The proposed Notice Program detailed above satisfies these criteria. The Notice Program will inform Settlement Class members of the Settlement's substantive terms. Joint Dec., ¶ 45. It will advise Settlement Class members of their options for remaining part of the Settlement Class or for opting out of the Settlement, submitting Claim Forms, objecting to the Settlement and/or the

Application for Attorneys' Fees, Costs, and Service Awards, and will instruct Settlement Class members on how to obtain additional information about the Settlement. *Id.* The Notice Program is designed to directly reach a high percentage of Settlement Class members with Postcard Notice. *Id.* Therefore, the Court should approve the Notice Program and the form and content of the Notices and Claim Form. Agreement, Exs. A-C.

### D.  A Final Approval Hearing Should be Scheduled

The last step in the Settlement approval process is a Final Approval Hearing, at which the Court will hear all evidence and argument necessary to make its final evaluation of the Settlement. Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of final approval. The Court will determine at or after the Final Approval Hearing whether the Settlement should be approved; whether to enter a final order and judgment under Rule 23(e); and whether to approve Class Counsel's Fee and Costs Application and request for Service Awards for Plaintiffs. Thus, Plaintiffs request that the Court schedule the Final Approval Hearing for the earliest date convenient for the Court that is consistent with the schedule below. Plaintiffs propose the following schedule for the remaining events in this case, which ensures that the appropriate state and federal officials are served with the notification required by the Class Action Fairness Act:

| | |
|---|---|
| Notice Date | 30 days after Preliminary Approval Order |
| Deadline to file Motion for Attorneys' Fees, Costs, and Service Award | 7 days prior to opt-out deadline |
| Deadline to file Motion for Final Approval | 14 days prior to Final Approval Hearing date |
| Opt-Out Deadline | 60 days after Notice Date |

| Objection Deadline | 60 days after Notice Date |
|---|---|
| Claims Deadline | 90 days after Notice Date |
| Final Approval Hearing | _____ __, 2024, at ____ am/pm (more than 100 days after the Notice Date) |

## CONCLUSION

Based on the foregoing, Plaintiffs and proposed Class Counsel respectfully request that the Court: (1) grant Preliminary Approval of the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3) and (e); (3) approve the Notice Program and the form of the Notices; (4) approve the Claim Form and Claim process; (5) approve the opt-out and objection procedures set forth in the Notice Program; (6) appoint Plaintiffs as Class Representatives; (7) appoint as Class Counsel the law firms and attorneys listed in Paragraph 1.35 of the Agreement; (8) appoint Epiq as Claims Administrator; (9) enjoin and bar all members of the Settlement Class from continuing in any litigation or asserting any claims against Albertsons and the other Released Parties arising out of, relating to, or in connection with the Released Claims prior to the Court's decision to grant Final Approval of the Settlement; and (10) schedule a Final Approval Hearing. A proposed Preliminary Approval Order is attached to the Motion.

DATED:    January 10, 2024            Respectfully submitted,

*/s/ P. Bradford deLeeuw*
P. Bradford deLeeuw (DE #3569)
DELEEUW LAW LLC
1301 Walnut Green Road
P.O. Box 2323
Wilmington, Delaware 19807
(302) 654-7444
brad@deleeuwlaw.com

OF COUNSEL:

Mason A. Barney (*pro hac vice*)
Tyler J. Bean (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500                    *Counsel for Plaintiffs and the*
New York, NY 10151                              *Settlement Class*
Tel: (212) 532-1091
mbarney@sirillp.com
tbean@sirillp.com

David K. Lietz
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
(t) 202.744.1795
(f) 202.686.2877
dlietz@milberg.com