**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **LAURA MEDINA,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**ALBERTSONS COMPANIES, INC.,**<br><br>Defendant. | Case No. 1:23-cv-00480-MN<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

DATED: April 2, 2024

P. Bradford deLeeuw (DE #3569)
DELEEUW LAW LLC
1301 Walnut Green Road
Wilmington, Delaware 19807
(302) 654-7444
brad@deleeuwlaw.com

OF COUNSEL:

Mason A. Barney (*pro hac vice*)
Tyler J. Bean (*pro hac vice*)

**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (212) 532-1091
mbarney@sirillp.com
tbean@sirillp.com

*Counsel for Plaintiffs and Class Counsel*

David K. Lietz (*pro hac vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
(t) 202.744.1795
(f) 202.686.2877
dlietz@milberg.com

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

STATEMENT OF FACTS ........................................................................................ 3

A. Incorporation By Reference .............................................................................. 3

B. Summary of Settlement...................................................................................... 3

i. Settlement Consideration ................................................................................... 3

ARGUMENT ............................................................................................................ 4

A. The Class Has Received Reasonable Notice of the Requested Fee and Expense Award, and Has Been Given a Reasonable Opportunity to Object ............................................. 4

B. Legal Standards for Fee Awards ........................................................................ 5

C. The Court Should Award a Reasonable Percentage of the Common Fund. .......... 6

D. The *Gunter/Prudential* Factors Weigh in Favor of Awarding the Fees Requested.8

i. The size of the fund created and the number of persons benefitted ............... 8

ii. The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel. .......................... 9

iii. The skill and efficiency of the attorneys involved .................................... 10

iv. The complexity and duration of the litigation ............................................ 11

v. The risk of non-payment ................................................................................ 13

vi. The amount of time devoted to the case by Plaintiffs' counsel .................. 14

vii. The awards in similar cases ......................................................................... 15

viii. The value of benefits attributable to the efforts of Plaintiffs' counsel relative to the efforts of other groups, such as government agencies conducting investigations ......................................................... 15

ix. The percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained ...................................................................................... 15

x. Any innovative terms of settlement ............................................................... 16

E. The Lodestar Cross-Check Confirms the Fee Request is Reasonable. ................ 16

i. Class Counsel's Request for Reimbursement of Expenses is Reasonable. . 19

ii. The Requested Service Award is Reasonable. ........................................... 19

CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Alberto v. Albertsons Companies, Inc.*,
C.A. No. 1:23-cv-00251-DKG ........................................ 1

*Animal Legal Def. Fund v. Lucas*,
No. CV 2:19-40 (W.D. Pa. Sept. 30, 2021) ........................................ 18

*Bryan v. Pittsburgh Plate Glass Co.*,
494 F.2d 799 (3d Cir. 1974) ........................................ 11

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000) ........................................ 19

*Dickerson v. York Int'l Corp.*,
No. 15-cv-01105, (M.D. Pa. Aug. 22, 2017) ........................................ 18

*Esslinger v. HSBC Bank Nevada, N.A.*,
No. CIV.A. 10-3213 (E.D. Pa. Nov. 20, 2012) ........................................ 15

*Fulton-Green v. Accolade, Inc.*,
No. CV 18-274 (E.D. Pa. Sept. 24, 2019) ........................................ 14, 20

*Galt v. Eagleville Hosp.*,
310 F. Supp. 3d 483 (E.D. Pa. 2018) ........................................ 7

*Glaberson v. Comcast Corp.*,
No. 03-6604 (E.D. Pa. Sept. 22, 2015) ........................................ 6

*Gordon v. Chipotle Mexican Grill, Inc.*,
No. 17-cv-01415-CMA-SKC (D. Colo. Dec. 16, 2019) ........................................ 12

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) ........................................ 8, 11, 16, 17

*Hall v. Accolade, Inc.*,
No. 17-cv- 03423 (E.D. Pa. Mar. 25, 2020) ........................................ 16

*Hammond v. The Bank of N.Y. Mellon Corp.*,
No. 08 Civ. 6060(RMB)(RLE) (S.D.N.Y. June 25, 2010) ........................................ 12

*Hensley v. Eckerhart*,
461 U.S. 424, 436 (1983) ........................................ 8

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299, 315 (N.D. Cal. 2018) ........................................ 14

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109, 132 (D.N.J. 2002) ........................................ 10

*In re AT&T Corp., Sec. Litig.*,
455 F.3d 160, 164 (3d Cir. 2006) ........................................ 6

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ........................................ 7, 17

*In re CertainTeed Fiber Cement Siding Litig.*,
303 F.R.D. 199 (E.D. Pa. 2014) ........................................ 18

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ........................................ 11

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ........................................ 7

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
293 F.R.D. 21 (D. Me. 2013) ........................................ 12

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009) ........................................ 6

*In re Merck & Co., Inc. Securities, Derivative & "Erisa" Litig.*,
No. CV 05-02367 (SRC) (D.N.J. June 3, 2016) ........................................ 8

*In re Nat'l Football League [NFL] Players' Concussion Inj. Litig.*,
814 F. App'x 678 (3d Cir. 2020) ........................................ 6

*In re NFL Players,*
2018 WL 1635648, at *5 ........................................ 10

*In re Nutella Mktg. & Sales Pracs. Litig.*,
589 F. App'x 53 (3d Cir. 2014) ........................................ 5

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ........................................ 8, 16

*In re Remeron Direct Purchaser Antitrust Litig.*, No. CIV.03-0085 FSH, 2005 WL 3008808, at
*16 (D.N.J. Nov. 9, 2005) ........................................ 16

*In re Rent- Way Sec. Litig.,*
305 F. Supp. 2d 491, 516 (W.D. Pa. 2003) ........................................ 14

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005), *as amended* (Feb. 25, 2005) .......... 6, 10, 17

*In re Sonic Corp. Customer Data Sec. Breach Litig.,*
No. 1:17-md-2807 (N.D. Ohio Aug. 12, 2019) .......... 14

*In re The Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) .......... 11

*In re TJX Cos. Sec. Breach Litig.*,
246 F.R.D. 389 (D. Mass. Nov. 29, 2007) .......... 12

*In re Viropharma Inc. Sec. Litig.*,
(E.D. Pa. Jan. 25, 2016) .......... 13

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) .......... 11

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) .......... 9

*In re AT & T Corp.*,
455 F.3d 160 (3d Cir. 2006) .......... 10

*In re Diet Drugs*,
582 F.3d 524 (3d Cir. 2009) .......... 10

*Kanefsky v. Honeywell Intl. Inc.*,
No. 18-CV- 15536 (WJM) (D.N.J. May 3, 2022) .......... 13, 16

*Kapolka v. Anchor Drilling Fluids USA, LLC*,
C.A. No. 2:18-01007-NR, (W.D. Pa. Oct. 22, 2019) .......... 11

*Karcich v. Stuart (In re Ikon Office Sols., Inc., Sec. Litig.)*,
194 F.R.D. 166 (E.D. Pa. 2000) .......... 16

*Krimes v. JPMorgan Chase Bank, N.A.*,
No. CV 15-5087 (E.D. Pa. May 24, 2017) .......... 20

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*,
No. 08-3610 (CLW) (D.N.J. May 18, 2015), *aff'd*, 639 F. App'x 880 (3d Cir. 2016) .......... 6

*Linman v. Marten Transpor*t,
No. 22-cv-204 (W.D. Wis.) .......... 9

*Maldonado v. Houstoun*,
256 F.3d 181 (3d Cir. 2001) .......... 17

*Maddy v. General Electric Co.*,
CV-14-490-JBS-KMW (D.N.J. June 26, 2017) ........ 9

*May v. Five Guys Enterprises*,
No. 1:23-cv-00029 (E.D. Va.) ........ 9

*McKittrick v. Allwell Behavorial,*
No. CH-2022-0174 (Muskingum County, OH) ........ 9

*McDonough v. Toys R Us, Inc.*,
80 F. Supp. 3d 626, 665 (E.D. Pa. 2015) ........ 19

*McGee v. Ann's Choice, Inc.*,
No. 12-2664 (E.D. Pa. June 4, 2014) ........ 20

*McKenna v. City of Phila.*,
582 F.3d 447 (3d Cir. 2009) ........ 17

*Moore v. Comcast Corp.*,
No. 08-cv-773 (E.D. Pa. Jan. 24, 2011) ........ 8

*New Berry, Inc. v. Smith*,
No. CV 18-1024 (W.D. Pa. Nov. 15, 2021) ........ 18

*O'Hern v. Vida Longevity Fund, LP*,
No. CV 21-402-SRF (D. Del. May 2, 2023) ........ 19

*O'Keefe v. Mercedes-Benz USA, LLC*,
214 F.R.D. 266 (E.D. Pa. 2003) ........ 13

*Oliver v. BMW of N.A., LLC*,
No. CV 17-12979 (CCC) (D.N.J. Mar. 8, 2021) ........ 10

*Pub. Interest Research Grp. v. Windall*,
51 F.3d 1179 (3d Cir. 1995) ........ 17

*Ripley v. Sunoco, Inc.*,
287 F.R.D. 300 (E.D. Pa. 2012) ........ 7

*Rose v. Travelers Home & Marine Ins. Co.*,
No. CV 19-977 (E.D. Pa. July 20, 2020) ........ 7

*Southern Independent Bank v. Fred's, Inc.*,
No. 2:15-CV-799-WKW (M.D. Ala. Mar. 13, 2019) ........ 12

*Schneider v. Chipotle Mexican Grill, Inc.*,
336 F.R.D. 588 (N.D. Cal. 2020) ........ 9

*Stoll v. Musculoskeletal Inst.*,
No. 8:20-CV-1798-CEH-AAS, (M.D. Fla. July 27, 2022),
report and recommendation adopted sub nom. *Stoll v. Musculoskeletal Inst.*,
Chartered, No. 8:20-CV-1798-CEH-AAS, (M.D. Fla. Nov. 14, 2022) .................................... 7

*Tardiff v. Knox Co.*,
365 F.3d 1 (1st Cir. 2004) .................................................................................... 12

*Thomsen v. Morley Companies, Inc.*,
No. 1:22-CV-10271 (E.D. Mich. May 12, 2023) ........................................................ 7

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
No. 2:06-CV-1833 (E.D. Pa. Apr. 21, 2020) ............................................................ 20

*Whiteley v. Zynerba Pharms., Inc.*,
No. 19-4959 (E.D. Pa. Sept. 16, 2021)..................................................................... 17

*Wood v. Saroj & Manju Invs. Philadelphia LLC*,
No. CV 19-2820-KSM, (E.D. Pa. May 14, 2021)....................................................... 20

**Other Authorities**

Manual for Complex Litigation, Fourth ....................................................................... 8

Newberg on Class Actions (5th ed.) .......................................................................... 18

**Rules**

Federal Rules of Civil Procedure ....................................................................... 1, 4, 5

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs Laura Medina, joined by Maryelin Alberto,[1] collectively referred to herein as "Plaintiffs," hereby move this Court pursuant to Federal Rules of Civil Procedure 23(h) and 54(d), for an award of attorneys' fees in the amount of $250,000, and reasonable out-of-pocket case expenses of $12,287.54 (together, the "Requested Fee and Expense Award"). Plaintiffs also respectfully move this Court for Service Awards for the Class Representatives in the amount of $2,500 each (for a total of $5,000) (the "Service Awards").

The Settlement, and the efforts of Settlement Class Counsel, created substantial relief for Settlement Class Members, in the form of a $750,000 non-reversionary settlement fund, which will be used to pay for benefits to the Settlement Class, notice and administration costs, Plaintiffs' service awards, and attorneys' fees and costs. Specifically, the Settlement provides for five categories of relief for Settlement Class Members: (1) reimbursement for lost time (up to 5 hours at $25 per hour) and ordinary out-of-pocket expenses up to $1,000; (2) reimbursement for extraordinary losses up to $5,000; (3) three-years of credit monitoring; (4) a $75 cash payment as an alternative to the other cash compensation offered above; and (5) equitable relief in the form of cybersecurity improvements to Defendant's systems, designed to better protect Plaintiffs' and Settlement Class Members' sensitive personal information in the future.

This Settlement represents an excellent result for the Settlement Class in this litigation and was obtained against a well-funded defense by Albertsons Companies, Inc. ("Albertsons" or

---

[1] As discussed in the preliminary approval motion, Maryelin Alberto is the plaintiff in *Alberto v. Albertsons Companies, Inc.*, C.A. No. 1:23-cv-00251-DKG (D. Idaho) (the "*Alberto* Action"), which also concerns the December 2022 data security incident. Medina and Alberto are parties to the Settlement Agreement and, if approved, the Settlement will resolve the claims asserted in this Action and in the *Alberto* Action. No separate fee award will be sought in the *Alberto* Action.

"Defendant"), which was represented by a well-regarded AmLaw 100 law firm (Alston & Bird). Although Plaintiffs believe in the merits of their claims, this litigation was inherently risky and complex. Declaration of David Lietz ("Lietz Decl."), attached hereto as Exhibit 1, ¶ 36. The claims involve the intricacies of data breach litigation (a fast-developing area in the law), and the Plaintiffs would face risks at each stage of litigation. *Id*. Against these risks, it was through the hard-fought negotiations and the skill and hard work of Settlement Class Counsel and the Class Representatives that the Settlement was achieved for the benefit of the Settlement Class. *Id.*

As compensation for the substantial benefit conferred upon the Settlement Class, Settlement Class Counsel requests this Court grant the Requested Fee and Expense Award. The $250,000 fee request represents one-third (33.33%) of the Settlement Fund. This request is contemplated by the Settlement Agreement, and Settlement Class Counsel apprised the Court of this request in its Motion for Preliminary Approval on January 10, 2024. S.A. ¶ 9.1; D.I. 22. This amount was also clearly delineated in both the Short and Long Form Notices to the Settlement Class (Exhibit B and C to D.I. 21-1). As of March 31, 2024, only two (2) class members have requested exclusion, and none (0) have objected to the Settlement, or to the attorneys' fees sought. Lietz Decl. ¶ 8.

The requested fees and costs are a reasonable percentage of the non-reversionary common fund benefit recovered for the Settlement Class. Federal district courts in Delaware and the Third Circuit have routinely approved attorneys' fees based on the recovery to the class that equals one-third of common fund. Plaintiffs' $12,287.54 request for costs and expenses actually incurred (which is in addition to the attorneys' fees sought, and not more than the $25,000 agreed upon in this Settlement Agreement) is also reasonable and necessary for litigation of this nature and size. Finally, Plaintiffs' request that the Court grant a $2,500 Service Award to each Class

Representative. This amount falls well within the range of service awards that have been approved by this Court and other court within the Third Circuit.

## STATEMENT OF FACTS

### A. Incorporation By Reference

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Opening Brief in Support of the Unopposed Motion for Preliminary Approval of Class Action Settlement filed on January 10, 2024 (D.I. 21, 22, and 23) and the accompanying Exhibits, including the proposed Settlement Agreement (D.I. 21-1), filed in conjunction therewith.

### B. Summary of Settlement

The settlement establishes the following Settlement Class:

> All individuals in the United States who were sent a notice of the Incident by Albertsons on or around April 21, 2023.

Settlement Agreement ("SA") ¶ 1.34. The Settlement Class excludes any judge presiding over this matter and any of their first-degree relatives, judicial staff, Albertsons' officers or directors, and persons who timely and validly request exclusion from the Settlement Class. *Id.*

#### i. Settlement Consideration

Pursuant to the Settlement, Albertsons agreed to create a non-reversionary cash Settlement Fund in the amount of $750,000.00 for the benefit of the Settlement Class. The Settlement Fund will be used to pay all Settlement Claims, Settlement Administration Costs, any Service Awards to Class Representatives awarded by the Court, and any attorneys' fees and costs awarded by the Court to Class Counsel. SA ¶ 1.38. Settlement Class Members who submit a valid and timely Claim Form may receive compensation for one or more of the following categories of loss resulting from the Incident: (1) a cash payment for ordinary losses up to $1,000.00, with such ordinary losses

to include (i) out of pocket expenses incurred as a result of the Incident, (ii) fees for credit reports, credit monitoring, or other identity theft insurance products purchased between December 23, 2022 and the date of the Claims Deadline, and (iii) up to five (5) hours of lost time, at $25/hour; and (2) a cash payment for extraordinary losses up to $5,000. *Id.*, ¶ 2.3.1. Settlement Class Members who submit a valid and timely Claim Form may also elect three (3) years of credit monitoring. *Id.* Or, they may elect to receive an Alternative Cash Payment in the amount of $75 in lieu of all of the above-referenced Settlement benefits, subject to a *pro rata* adjustment (upwards or downwards) as set forth in Paragraph 2.10 of the Agreement after all expenses are paid from the Settlement Fund. *Id.*

In addition, Albertsons has agreed to meaningful Business Practice Commitments. *See S*A, ¶ 2.4. In the Settlement, Albertsons confirmed that all of these security measures have been implemented, and that all costs associated with the implementation of these Business Practice Commitments will be borne by Albertsons separate and apart from the Settlement Fund. *Id.*

## ARGUMENT

For the reasons set forth below, the Requested Fee and Expense Award is reasonable and should be granted.

### A. The Class Has Received Reasonable Notice of the Requested Fee and Expense Award, and Has Been Given a Reasonable Opportunity to Object

Fed. R. Civ. P. 23(h)(1) provides that "[n]otice of the motion [for an award of attorneys' fees and costs] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Class Counsel provided reasonable notice of this motion through direct notice efforts, and afforded Class Members an opportunity to object to this motion.

On February 9, 2024, notice was sent in postcard form via first-class U.S. mail, postage prepaid, to the 32,877 Settlement Class members for whom Albertsons provided unique Settlement

Class Member records with complete and mailable addresses a postal address. Lietz Decl. ¶ 6. After remailings, the current deliverable or "reach" rate is 94.7%, far exceeding the 70% threshold for satisfying due process concerns. *Id.* A description of the notice program will be submitted in the Claims Administrator's declaration to be filed in connection with the motion for final approval.

The postcard notices sent to Class Members plainly indicated that Class Counsel would seek "up to $250,000 in attorneys' fees, and reimbursement of expenses up to $25,000" and "$2,500 Service Awards to each Class Representative." D.I. 21-1, Ex. C (Short Form Notice). The fees, expenses, and service awards to be sought were also prominently featured in the Long Form Notice (D.I. 21-1, Ex. B), which is posted on the settlement website (https://acdatasettlement.com/Home/Documents) that went "live" on or before February 9, 2024 (the date that the postcard notices were mailed).

The schedule approved by the Court requires Class counsel to file their Motion for an Award of Attorneys' Fees and Reimbursement of Costs at least 7 days in advance of the deadline for Settlement Class Members to object or exclude themselves from the Settlement Agreement. D.I. 24 ¶ 17. As such, Class Members have a week after the filing of this motion to lodge any objections to the requested fees, expenses, and service awards. Class Members will be able to view this motion for fees, expenses, and service awards on the Settlement website.

**B. Legal Standards for Fee Awards**

"In a certified class action, the court may award reasonable attorney's fees and . . . costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "The Supreme Court has recognized that 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Nutella Mktg. & Sales Pracs. Litig.*, 589 F. App'x 53, 58 (3d Cir. 2014) (quoting

*Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000)). "The awarding of attorneys' fees in a class action settlement is within the Court's discretion, provided that the Court thoroughly analyzes and reviews an application for such fees." *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, No. 08-3610 (CLW), 2015 WL 2383358, at *7 (D.N.J. May 18, 2015), *aff'd*, 639 F. App'x 880 (3d Cir. 2016) (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 299 (3d Cir. 2005), *as amended* (Feb. 25, 2005)); *In re Nat'l Football League [NFL] Players' Concussion Inj. Litig.*, 814 F. App'x 678, 683 n.6 (3d Cir. 2020) ("we give district courts considerable deference in fee decisions").

Here, in the Settlement Agreement, the Parties agreed that Class Counsel will move the Court for an Order awarding attorneys' fees not to exceed one-third of the Settlement Fund (33.33%), and expenses not to exceed $25,000.

The Third Circuit has approved two methods to calculate appropriate attorneys' fees in class action settlements—the lodestar method and the percentage-of-recovery method. *In re AT&T Corp., Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). The ultimate determination of the proper amount of attorneys' fees rests within the sound discretion of the court based on the facts of the case. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 280 (3d Cir. 2009). As explained below, the use of the percentage-of-recovery method is appropriate in this case. The reasonableness of the fee request is also fully supported by a lodestar cross-check, indicating that the fee should be approved regardless of the method used by the Court.

**C. The Court Should Award a Reasonable Percentage of the Common Fund.**

In the Third Circuit, the percentage-of-recovery is generally favored in cases involving a settlement that creates a fund. *See Glaberson v. Comcast Corp.*, Civil Action No. 03-6604, 2015 WL 5582251, at *11 (E.D. Pa. Sept. 22, 2015) ("The Third Circuit favors the percentage-of-recovery method of calculating fee awards in common fund cases. Courts within the Third Circuit

and elsewhere routinely use this method in antitrust class actions.") (collecting cases). "Courts use the percentage of recovery method in common fund cases on the theory that the class would be unjustly enriched if it did not compensate the counsel responsible for generating the valuable fund bestowed on the class." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995).

The combined attorneys' fee request of $250,000 is reasonable under the percentage-of-the-recovery method. Federal district courts in the Third Circuit have found reasonable fee awards "generally range from 19% to 45% of the settlement fund." *Rose v. Travelers Home & Marine Ins. Co.*, No. CV 19-977, 2020 WL 4059613, at *11 (E.D. Pa. July 20, 2020) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 736 (3d Cir. 2001)); *see also In re Gen. Motors*, 55 F.3d at 822 (same); *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 315 (E.D. Pa. 2012) (same); *Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 498 (E.D. Pa. 2018) ("fee awards ranging from 30% to 43% have been awarded in cases with funds ranging from $400,000 to $6.5 million").

Class Counsel's combined fee request also is commensurate with fee awards in other data breach cases. *See e.g., Thomsen v. Morley Companies, Inc.*, No. 1:22-CV-10271, 2023 WL 3437802, at *2 (E.D. Mich. May 12, 2023) (awarding fee award of 33% in a data breach class action settlement that was "presumptively reasonable"); *Stoll v. Musculoskeletal Inst.*, No. 8:20-CV-1798-CEH-AAS, 2022 WL 16927150, at *3 (M.D. Fla. July 27, 2022), report and recommendation adopted sub nom. *Stoll v. Musculoskeletal Inst.*, Chartered, No. 8:20-CV-1798-CEH-AAS, 2022 WL 16923698 (M.D. Fla. Nov. 14, 2022) (awarding 33% fee award in a data breach class action settlement).

### D. The *Gunter/Prudential* Factors Weigh in Favor of Awarding the Fees Requested.

The Third Circuit utilizes the ten factors identified in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000) and *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) (the "*Gunter/Prudential* factors") in determining whether a fee is reasonable:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement.

*Gunter*, 223 F.3d at 195 n.1; *see also Prudential*, 148 F.3d at 336-40. The *Gunter*/*Prudential* factors should not "be applied in a rigid, formulaic manner, but rather a court must weigh them in light of the facts and circumstances of each case." *Moore v. Comcast Corp.*, No. 08-cv-773, 2011 WL 238821, at *4 (E.D. Pa. Jan. 24, 2011).

#### i. The size of the fund created and the number of persons benefitted

"The size of the fund is indicative of the success obtained through a settlement, and, accordingly, a significant consideration in evaluating the reasonableness of an award for attorneys' fees." *In re Merck & Co., Inc. Securities, Derivative & "Erisa" Litig.*, No. CV 05-02367 (SRC), 2016 WL 11686450, at *8 (D.N.J. June 3, 2016); *see also* Manual for Complex Litigation, Fourth, § 14.121 ("The greatest emphasis is the size of the fund created, because a common fund is itself a measure of success and represents the benchmark from which a reasonable fee will be awarded.") (citations and internal quotation marks omitted); *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)

("the most critical factor is the degree of success obtained"). Here, counsel obtained a significant amount for the class, negotiating a settlement fund of $750,000 for 32,877 Class Members. This works out to $22.81 per Class Member, which equals or exceeds the recoveries achieved in other similarly sized data breach class action settlements finally approved by courts.[2]

All 32,877 Class Members may claim the substantial benefits offered in this settlement. And to date, many have, with the total number of claims as of March 31, 2024 standing at 2,308, which works out to a 7.0% claims rate. Lietz Decl. ¶ 7. This far exceeds the claims rate in other settlements. *See, e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) ("Here, the 0.83% claims rate . . . is on par with other consumer cases, and does not otherwise weigh against approval."); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (approving 1.8% claims rate).

In light of the complexity, likely duration and expense of continued litigation, and the risk of establishing liability and damages at trial, this is an excellent result. *See Maddy v. General Electric Co.*, CV-14-490-JBS-KMW, 2017 WL 2780741, at *7 (D.N.J. June 26, 2017) ("[T]here is tremendous benefit to the Class Members in light of the stage of the litigation, the remaining hurdles prior to even arriving at a trial date, and the risks associated with continued litigation"). Given the size of the fund, as well as the number of class members entitled to benefits, this first factor strongly supports Plaintiffs' counsel's fee request.

**ii. The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel.**

---

[2] *See e.g. Linman v. Marten Transport*, No. 22-cv-204 (W.D. Wis.), $520,000 for 35,511 class members, $16.64 per person; *May v. Five Guys Enterprises*, Case No. 1:23-cv-00029 (E.D. Va.), $700,000 for 37,922 class members, $18.45 per person; *McKittrick v. Allwell Behavorial,* CH-2022-0174 (Muskingum County, OH), $650,000 for 31,000 class members, $20.97 per person.

As of March 31, 2024, no Class Members have submitted an objection to the Settlement or proposed Fee Award. Lietz Decl. ¶ 8. The deadline for submitting objections is April 9, 2024. *Id*. The lack of objections weighs in favor of Class Counsel's request. *See In re Diet Drugs*, 582 F.3d 524, 541–42 (3d Cir. 2009) ("few objections to the settlement terms and to the fees requested by counsel" weigh in favor of approval); *In re AT & T Corp.*, 455 F.3d 160, 170 (3d Cir. 2006) ("the absence of substantial objections by class members to the fees requested by counsel strongly supports approval"); *In re Rite Aid*, 396 F.3d at 305 ("[t]he class's reaction to the fee request supports approval of the requested fees").

**iii. The skill and efficiency of the attorneys involved**

The substantial recovery obtained demonstrates that Class Counsel zealously pursued the interests of Plaintiffs and the Class. *See*, *e.g.*, *Oliver v. BMW of N.A., LLC*, No. CV 17-12979 (CCC), 2021 WL 870662, at *10 (D.N.J. Mar. 8, 2021) (citing *In re AremisSoft Corp. Sec. Litig*., 210 F.R.D. 109, 132 (D.N.J. 2002) ("the single clearest factor reflecting the quality of the class counsels' services to the class are the results obtained")). Notably, "[n]o one has taken issue with the skill or efficiency of Class Counsel in securing this Settlement Agreement, nor could they. This factor weighs heavily in Class Counsel's favor." *In re NFL Players,* 2018 WL 1635648, at *5.

Class Counsel vigorously represented the Settlement Class and will continue to do so through Final Approval. *See* D.I. 23, Joint Dec., ¶ 25. To date, proposed Class Counsel have: (i) conducted a thorough pre-suit investigation that resulted in the preparation of multiple detailed complaints; (ii) gathered Plaintiffs' documents and relevant information relating to the Incident; (iii) filed complaints in two jurisdictions, with subsequent coordination between the two actions; (iv) analyzed Defendant's motions to dismiss, and began preparing oppositions to those motions; (v) requested and reviewed relevant information via informal discovery for mediation; (vi)

prepared a detailed mediation statement; (vii) participated in mediation with an experienced data breach mediator, Robert A. Meyer of JAMS; (viii) conducted settlement discussions, achieving a very favorable Settlement for the Settlement Class; (ix) negotiated a comprehensive Agreement that includes a robust Notice Program, well-crafted Notices and Claim Form, and an easy to understand Claims Process, and (x) oversaw the successful implementation of the Notice Program and a robust and favorable response from the Class Members in making claims. *Id.* at ¶ 17.

Moreover, the fact that Class Counsel was able to resolve these difficult cases within months of initiating them is further indicative of their skill and efficiency in litigating these matters. *See In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 262-63 (E.D. Va. 2009) (finding that Counsel's ability to resolve the case within one year of the Court's denial of Defendant's Motion to Dismiss to be indicative of Counsel's "skill and efficiency."). In other words, Plaintiffs did not run up the bill to seek additional fees. Accordingly, this factor supports the proposed fee award.

**iv. The complexity and duration of the litigation**

> The fourth *Gunter* factor is intended to capture "the probable costs, in both time and money, of continued litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig. ("GM Truck")*, 55 F.3d 768, 812 (3d Cir. 1995) (quoting *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974)); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[T]his factor favors settlement because continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial."); *Kapolka v. Anchor Drilling Fluids USA, LLC*, C.A. No. 2:18-01007-NR, 2019 WL 5394751, at *9 (W.D. Pa. Oct. 22, 2019) (counsel's work saved "[c]onsiderable judicial time and resources").

This matter affects the rights of almost 33,000 persons whose data was impacted in the

Data Incident, and is a complex piece of litigation with many potential pitfalls. This case involved complex issues of the novel and evolving area of data breach litigation. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). Albertsons has consistently denied the allegations raised by Plaintiffs and made clear at the outset that it would vigorously defend the case, as evidenced by its substantial motions to dismiss. While Plaintiffs have arguments and authorities that can support their allegations, the number of issues in this case, which centers on a developing area of the law—data breach litigation—creates uncertainty.

Due at least in part to the cutting-edge nature of data protection technology and rapidly evolving law, data breach cases like this one face substantial hurdles—even just to make it past the pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Plaintiffs faced the risk of obtaining class certification. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (denying class certification in data breach class action). Though they strongly believe in the merits of their claims, Plaintiffs and Class Counsel acknowledge that proving causation and damages in the emerging area of data breach cases can be difficult, and is by no means guaranteed. *See, e.g., Southern Independent Bank v. Fred's, Inc.*, No. 2:15-CV-799-WKW, 2019 WL 1179396, at *8 (M.D. Ala. Mar. 13, 2019) (holding under Daubert motion that causation was not met for class certification purposes in data security breach case*); In re TJX Cos. Sec. Breach Litig.*, 246 F.R.D. 389, 398 (D. Mass. Nov. 29, 2007) ("[T]he need for individualized damages decisions does not ordinarily defeat predominance where there are … disputed common issues as to liability.'") (quoting *Tardiff v. Knox Co*., 365 F.3d 1, 6 (1st Cir. 2004)). Continued

litigation further would have required formal discovery, depositions, expert reports, maintaining class certification throughout trial, and summary judgment, as well as possible appeals (interlocutory and/or after the merits), which would require additional rounds of briefing and the possibility of no recovery at all.

While Plaintiffs are confident in the strength of their claims, they are also pragmatic in their awareness of the various defenses available to Albertsons, as well as the risks inherent to continued litigation. Through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all, at some point likely far in the future. *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016)(settlement ensures recovery now, rather than the "speculative promise of a larger payment years from now."). Thus, this factor weighs in favor of granting this fee request.

**v. The risk of non-payment**

Settlement Class Counsel took this case on a purely contingent basis. Lietz Decl. ¶ 9. The retainer agreements Settlement Class Counsel has with Plaintiffs do not provide for fees apart from those earned on a contingent basis, and, in the case of class settlement, attorneys' fees would only be awarded to Settlement Class Counsel, if approved by the Court. *Id.* ¶ 14. As such, attorneys' fees were not guaranteed in this case. *Id.* Settlement Class Counsel assumed significant risk of nonpayment of attorneys' fees. *Id.* ¶ 9. Thus, Settlement Class Counsel took on these significant risks knowing full well their efforts may not bear fruit. *Id.* ¶ 11.

"Any contingency fee includes a risk of non-payment." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 309 (E.D. Pa. 2003); *see also Kanefsky v. Honeywell Intl. Inc.*, No. 18-CV- 15536 (WJM), 2022 WL 1320827, at *10 (D.N.J. May 3, 2022). In this case, while Class Counsel were optimistic that Plaintiffs' claims would prevail, they recognized that success in

this case was not assured. The risk of nonpayment was substantial. *See, e.g.*, *In re Sonic Corp. Customer Data Sec. Breach Litig.,* No. 1:17-md-2807, 2019 WL 3773737 at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."); *In re Anthem, Inc. Data Breach Litig.,* 327 F.R.D. 299, 315 (N.D. Cal. 2018) (noting that "many of the legal issues presented in [] data-breach case[s] are novel"). As one Third Circuit district court noted in another data breach class action case, "Class Counsel invested considerable resources into this case with no guarantee that they would recover those costs given that they were retained on a contingency fee basis. This factor again weighs in favor of determining that the fee is reasonable." *Fulton-Green v. Accolade, Inc.,* No. CV 18-274, 2019 WL 4677954, at *13 (E.D. Pa. Sept. 24, 2019); *In re Rent- Way Sec. Litig.,* 305 F. Supp. 2d 491, 516 (W.D. Pa. 2003).

From the outset, Class Counsel undertook this complex and potentially lengthy litigation knowing that there was significant and real risk as to whether they would be compensated. Despite the serious litigation risks, Class Counsel were able to obtain a settlement that provides significant present relief to the Class, including substantial monetary benefits. Class Counsel undertook a significant risk here and the fee award should reflect that risk.

**vi. The amount of time devoted to the case by Plaintiffs' counsel**

Class Counsel devoted 255.4 hours, through March 31, 2024, to this litigation. The time expended by Class Counsel was necessary to obtain this recovery, and to consummate this Settlement. The time expended was reasonable based on the needs of the case and ultimately resulted in a highly favorable Settlement for the benefit of the Class. This factor therefore weighs in favor of the requested fee.

**vii. The awards in similar cases**

As shown above, awards of one-third of the common fund are common in data breach cases. An award of one-third of the fund has been deemed reasonable by courts in the Third Circuit.[3] The $250,000 fee request is one-third of the Settlement Fund, and compares favorably to the awards in other data breach cases.

**viii. The value of benefits attributable to the efforts of Plaintiffs' counsel relative to the efforts of other groups, such as government agencies conducting investigations**

The Settlement Agreement was obtained by Class Counsel without the benefit of findings from any government investigation. There has been no publicly announced action by any federal or state authorities relating to this data breach. "There is no contention, by objectors or otherwise, that the settlement could be attributed to work done by other groups, such as government agencies." *Esslinger v. HSBC Bank Nevada, N.A.*, No. CIV.A. 10-3213, 2012 WL 5866074, at *14 (E.D. Pa. Nov. 20, 2012). This factor therefore weighs in favor of the requested fee.

**ix. The percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained**

Class Counsel's requested fee is reasonable relative to contingent fee percentages commonly entered into in private fee agreements. *See, e.g.*, *Hall v. Accolade, Inc.*, No. 17-cv-

---

[3] *McIntyre v. RealPage, Inc.,* No. 18-cv-03934, 2023 WL 2643201, at *3, n.5 (E.D. Pa. Mar. 24, 2023) (finding a fee request of 1/3 of a fund to be "'squarely within the range of awards found to be reasonable by the courts.'") (quoting *Rossini v. PNC Fin. Servs. Grp., Inc.*, No. 18-cv-1370, 2020 WL 3481458, at *19 (W.D. Pa. June 26, 2020)); *Ahrendsen v. Prudent Fiduciary Servs., LLC*, No. 21-cv-2157, 2023 WL 4139151, at *5 (E.D. Pa. June 22, 2023) ("class counsel reasonably seeks one-third of the settlement fund…for attorneys' fees"); *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.,* No. 17-cv-341, 2022 WL 16533571, at *8 (E.D. Pa. Oct. 28, 2022) ("The fees requested constitute one third of the Settlement fund, which is within a reasonable range given both lead counsel's efforts in a challenging action made more complex by certain adverse facts and a comparison with fee awards in other Third Circuit class action settlements.") (citations omitted)

03423, 2020 WL 1477688, at *11 (E.D. Pa. Mar. 25, 2020) ("Contingency fees generally range between 30% to 40%."); *Kanefsky*, 2022 WL 1320827, at *11 ("The requested award of fees and expenses relative to the size of the recovery and constructive common fund is also in line with contingent fees that are routinely negotiated in the private marketplace."); *In re Remeron Direct Purchaser Antitrust Litig.*, No. CIV.03-0085 FSH, 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005) ("Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation."); *Karcich v. Stuart (In re Ikon Office Sols., Inc., Sec. Litig.)*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[I]n private contingency fee cases . . . plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."). This factor therefore weighs in favor of the requested fee.

**x. Any innovative terms of settlement**

The Settlement Agreement provides for a multi-tiered claims system whereby Class Members may obtain a recovery based on the severity of harm caused by the Data Breach. Class Members suffering ordinary losses can claim up to $1000 in reimbursements, while those suffering extraordinary losses can claim up to $5000. Class Members currently suffering no out-of-pocket losses can choose prophylactic credit monitoring, or a cash award. This approach is tailored to individual Settlement Class Members' claims while being administratively efficient. This factor therefore weighs in favor of the requested fee. *See In re Prudential*, 148 F.3d at 339 ("multi-tiered review process" is an innovative term that weighs in favor of a fee award).

Where all the *Gunter/Prudential* factors weigh in favor of the fees requested, the Court should grant Plaintiffs' fee motion.

**E. The Lodestar Cross-Check Confirms the Fee Request is Reasonable.**

The Third Circuit has recommended that courts crosscheck the reasonableness of the

attorneys' fee request using the lodestar method. *Gunter*, 223 F.3d at 195 n.1. "The purpose of the cross-check is to ensure that the percentage approach does not result in an 'extraordinary' lodestar multiple or windfall." *Whiteley v. Zynerba Pharms., Inc.*, Civil Action No. 19-4959 2021 WL 4206696, at *13 (E.D. Pa. Sept. 16, 2021)(quoting *In re Cendant*, 264 F.3d at 285). The Third Circuit has stated that a lodestar cross-check entails an abridged lodestar analysis that requires neither "mathematical precision nor bean counting." *In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294, 305 (3d Cir. 2005). The Court need not receive or review actual billing records when conducting this analysis. *Id.* at 307.

Under the lodestar method, a court begins the process by calculating the "lodestar," i.e., the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009). Once the lodestar is determined, the court must then decide whether additional adjustments are appropriate. *Id.* A reasonable hourly rate in the lodestar calculation is "[g]enerally . . . calculated according to the prevailing market rates in the relevant community," taking into account "the experience and skill of the . . . attorney and compar[ing] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). The prevailing market rate is usually deemed reasonable. *Pub. Interest Research Grp. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995).

Class Counsel spent 255.4 hours litigating this action, producing a lodestar amount of $179,039.70 based on standard, current hourly rates that range from $225 to $1057. Lietz Decl., ¶¶ 23-27. Summaries of the number of hours expended by attorneys and staff are provided in the supporting declaration of Counsel, along with a description of the various tasks performed. Lietz Decl. ¶¶ 3, 23-26. The reasonableness of Class Counsel's rates is also supported by the declaration,

which establishes that the rates are the same as their standard hourly rates charged to paying clients on non-contingent matters and are in accord with the prevailing rates for class action and complex commercial litigation in the relevant legal markets (i.e. the national market for data breach litigation). Lietz Dec. ¶¶ 18-20. *See New Berry, Inc. v. Smith*, No. CV 18-1024, 2021 WL 5332165, at *2 (W.D. Pa. Nov. 15, 2021) ("The best evidence of a prevailing market rate is counsel's customary billing rate."); *Animal Legal Def. Fund v. Lucas*, No. CV 2:19-40, 2021 WL 4479483, at *1 (W.D. Pa. Sept. 30, 2021) ("[T]he attorney's normal billing rate is an appropriate baseline for assessing the reasonableness of the rate requested."). These rates have been approved in other class action cases. Lietz Fee Decl. ¶¶ 21-22.

Class Counsel's current lodestar represents a modest lodestar multiplier of 1.396. The 1.396 multiplier is much lower than multipliers commonly awarded in the Third Circuit. *See* Newberg § 15:89 (noting two separate studies in which the mean multiplier in the Third Circuit was 2.01 and 1.38, respectively; *Dickerson v. York Int'l Corp.*, No. 15-cv-01105, 2017 WL 3601948, at *11 (M.D. Pa. Aug. 22, 2017) ("Multipliers between one and four are routinely approved in the Third Circuit."); *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 225 (E.D. Pa. 2014) ("The [Third Circuit] Court of Appeals has recognized that multipliers 'ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.'"). Given the quality of Class Counsel's work and results achieved in these circumstances, the lodestar cross-check supports the reasonableness of the requested fee.

Class Counsel expect to expend at least another 40-50 hours of time consummating this Settlement, including preparing and filing a motion for final approval, participating in the final fairness hearing, assisting Settlement Class Members with their claims and answering their questions, and working with the Claims Administrator on claims administration and distribution

of benefits to the Settlement Class. This means that by the time this case is brought to final approval, the lodestar "multiplier" will be lower (approaching 1.0), once these additional attorney hours are expended. Accordingly, the lodestar cross-check fully supports the fees requested.

**i. Class Counsel's Request for Reimbursement of Expenses is Reasonable.**

"Counsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *O'Hern v. Vida Longevity Fund, LP*, No. CV 21-402-SRF, 2023 WL 3204044, at *10 (D. Del. May 2, 2023). Class Counsel seeks reimbursement of $12,287.54 for the reasonable expenses incurred to advance this litigation. These expenses are outlined in the supporting declaration submitted concurrently herewith. Lietz Decl., ¶ 28. These expenses are typical in litigation, were necessary for the successful prosecution and resolution of the claims against Albertsons (as the bulk of the expenses are the mediator's fees), and should be approved.

**ii. The Requested Service Award is Reasonable.**

Service awards are "not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of the entire class." *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 665 (E.D. Pa. 2015) (quotations omitted). Generally, "[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (quotation omitted). Factors courts consider when deciding to give service awards include "the risk to the plaintiff in commencing litigation, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation;

and the plaintiff's personal benefit (or lack thereof) purely in her capacity as a member of the class." *Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 2:06-CV-1833, 2020 WL 1922902, at *33 (E.D. Pa. Apr. 21, 2020) (quoting *McGee v. Ann's Choice, Inc.*, No. 12-2664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014)). Federal district courts in the Third Circuit routinely approve service awards of $1,000 to $5,000.[4]

For their efforts on the case, Plaintiffs seek modest Service Awards in the amount of $2,500. Plaintiffs were actively engaged in this action, including providing assisting in the investigation of the case, producing relevant documents, reviewing and approving pleadings, reviewing the Settlement documents, and answering counsel's many questions. Lietz Decl. ¶ 34. Moreover, the Service Award requested falls well below the range of service awards that have been approved by courts in Delaware and in the Third Circuit. Thus, this Court should grant the requested Service Awards.

## CONCLUSION

Class Counsel, with the help of Plaintiffs, have made significant benefits available to Settlement Class Members. In return, Plaintiffs seek attorneys' fees, expenses, and service awards commensurate with those regularly approved by courts sitting in Third Circuit. The attorneys' fees, expenses, and service awards are reasonable, and should be approved.

[4] *See, e.g., Wood v. Saroj & Manju Invs. Philadelphia LLC*, No. CV 19-2820-KSM, 2021 WL 1945809, at *10 (E.D. Pa. May 14, 2021) (awarding a service award of $2,500 to the settlement class representative); *Fulton-Green,* 2019 WL 4677954, at *13 (awarding service awards of $1,000 to each settlement class representative); *Krimes v. JPMorgan Chase Bank, N.A.*, No. CV 15-5087, 2017 WL 2262998, at *11 (E.D. Pa. May 24, 2017) (awarding service award of $5,000 to the settlement class representative)

DATED: April 2, 2024

Respectfully submitted,

*/s/ P. Bradford deLeeuw*
P. Bradford deLeeuw (DE #3569)
**DELEEUW LAW LLC**
1301 Walnut Green Road
P.O. Box 2323
Wilmington, Delaware 19807
(302) 654-7444
brad@deleeuwlaw.com

Mason A. Barney*
Tyler J. Bean*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (212) 532-1091
mbarney@sirillp.com
tbean@sirillp.com

David K. Lietz*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
(t) 202.744.1795
(f) 202.686.2877
dlietz@milberg.com

*Counsel for Plaintiffs and Class Counsel*

*Admitted *pro hac vice*