## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **LAURA MEDINA,** individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>**ALBERTSONS COMPANIES, INC.,**<br><br>   Defendant. | Case No. 1:23-cv-00480-MN<br><br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## PLAINTIFFS' BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

DATED:     April 12, 2024

P. Bradford deLeeuw (DE #3569)
DELEEUW LAW LLC
1301 Walnut Green Road
Wilmington, Delaware 19807
(302) 654-7444
brad@deleeuwlaw.com

i

OF COUNSEL:

Mason A. Barney (*pro hac vice*)
Tyler J. Bean (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500          *Counsel for Plaintiffs and*
New York, NY 10151                   *Class Counsel*
Tel: (212) 532-1091
mbarney@sirillp.com
tbean@sirillp.com


David K. Lietz (*pro hac vice*)
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
(t) 202.744.1795
(f) 202.686.2877
dlietz@milberg.com

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................... 1

STATEMENT OF FACTS ...................................................................................................... 3

    A.   SUMMARY OF THE SETTLEMENT TERMS ................................................................ 4

        1.   Settlement Class.................................................................................... 4

        2.   Monetary Relief ................................................................................... 4

        3.   Non-Monetary Relief ........................................................................... 5

        4.   Attorneys' Fees, Reimbursement of Expenses, and Service Awards ................ 5

    B.   IMPLEMENTATION OF THE SETTLEMENT NOTICE PLAN ........................................... 6

    C.   RELEASE OF CLAIMS ................................................................................... 8

ARGUMENT ...................................................................................................................... 8

    A.   The Settlement is Fair, Reasonable, and Adequate.......................................... 9

    B.   The Girsh Factors Support Final Approval.................................................... 12

        1.   The Complexity, Expense, and Likely Duration of the Litigation............. 12

        2.   Reaction of the Settlement Class.................................................. 13

        3.   The Stage of the Proceedings and the Amount of Discovery Completed .. 13

        4.   The Risks of Establishing Liability and Damages at Trial........................ 14

        5.   The Ability of Albertsons to Withstand a Greater Judgment.................... 15

        6.   The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation .......................... 15

    C.   The Settlement Satisfies the *Prudential* Factors ........................................... 16

CONCLUSION.................................................................................................................... 19

## TABLE OF AUTHORITIES

<u>Cases</u>

*Alves v. Main*,
    No. 01-cv-789 (DMC), 2012 U.S. Dist. LEXIS 171773 (D. N.J. Dec. 4, 2012) ...................... 10

*Bredbenner v. Liberty Travel, Inc.*,
    No. 09-905, 2011 U.S. Dist. LEXIS 38663 (D. N.J. Apr. 8, 2011). ................................... 12, 13

*Chapman, et al. v. Insight Global LLC,*
    No. 1:21-cv-824-CCC (M.D. Penn.) .......................................................................... 17

*Cochran, et al. v. Kroger Co.*, \
    No. 5:21-cv-01887-EJD (N.D. Cal.), ....................................................................... 18

*Corona v. Sony Pictures Entertainment, Inc.,*
    No. 2:14-cv-9600 (C.D. Cal.), ................................................................................. 8

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590, 595 (3d Cir. 2010) ............................................................................. 8

*Fox v. Iowa Health Sys.*,
    No. 3:18-cv-00327-JDP, 2021 U.S. Dist. LEXIS 40640 (W.D. Wis. Mar. 4, 2021) ............... 11

*Galt v. Eagleville Hosp.*,
    310 F. Supp. 3d 483 (E.D. Pa. 2018) ...................................................................... 8

*Girsh v. Jepson*,
    521 F.2d 1536 (3d Cir. 1975): ............................................................... 12,14,15,16

*Gordon v. Chipotle Mexican Grill, Inc.*,
    No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430 (D. Colo. Dec. 16, 2019 ........ 11

*Halley v. Honeywell Int'l, Inc.*,
    861 F.3d 481 (3d Cir. 2017 ................................................................................... 9

*Hammond v. Bank of N.Y. Mellon Corp.*,
    No. 08-cv-6060 (RMB) (RLE), 2010 U.S. Dist. LEXIS 71996  (S.D.N.Y. June 25, 2010) .... 11

*Hillman v. Lexicon Consulting, Inc.*,
    No. EDCV-16-01186-VAP(SPx), 2017 U.S. Dist. LEXUS 231075 (C.D. Cal. Apr. 27, 2017 14

*In re Am. Family Enters.*,
    256 B.R. 377 (D.N.J. 2000). ................................................................................. 12

*In re Banner Health Data Breach Litigation*,
No. 2:16-cv-2696 (D. Ariz.), ECF No. 170 ............................................................. 8

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
269 F.R.D. 468 (E.D. Pa. 2010)................................................................................ 8

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig.*,
55 F.3d 768 (3d Cir. 1995)..................................................................................... 9,12

*In re Impinj, Inc. Derivative Litig.*,
No. 18-1686-RGA, 2021 U.S. Dist. LEXIS 224687 (D. Del. Nov. 22, 2021) ........ 13

*In re Johnson & Johnson Derivative Litig.*,
900 F. Supp. 2d 467 (D.N.J. 2012) .......................................................................... 13

*In re Krell v. Prudential Ins. Co. of Am. (In re Prudential)*,
148 F.3d 283 (3d Cir. 1998 .......................................................................... 14,16,17,18

*In re Pet Food Prods. Liab. Litig.*,
629 F.3d 333 (3d Cir. 2010)..................................................................................... 17

*In re Rite Aid Corp. Sec. Litig.*, 1
46 F. Supp. 2d 706 (E.D. Pa. 2001) ........................................................................ 15

*In re Shop Vac Mktg. & Sales Practices Litig.*,
No. 4:12-MD-2380, 2016 U.S. Dist. LEXIS 69345 (M.D. Pa. May 26, 2016)........ 18

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
266 F. Supp. 3d 1 (D.D.C. 2017).............................................................................. 11

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516/2004 U.S. App. LEXIS 25180 (D.Del. 2003)..................................... 15

*In re Wawa, Inc., Data Sec. Litig.*,
No. 19-6019, 2022 U.S. Dist. LEXIS 72569 (E.D. Pa. April 20, 2022).................. 8

*In Re: Cendant Corporation Litig.*, 264 F.3d 201 (3d Cir. 1992)................................. 12

*Kyle Stechert v. Travelers Home & Marine Ins. Co.*,
No. 17-0784-KSM, 2022 U.S. Dist. LEXIS 113277 (E.D. Pa. June 27, 2022)........ 6

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*,
639 F. App'x 880 (3d Cir. 2016) ............................................................................. 16

*Linman v. Marten Transpor*t,
No. 22-cv-204 (W.D. Wis.) ..................................................................................... 17

v

*Linney v. Cellular Alaska Partnership*,
    151 F.3d 1234 (9th Cir. 1998) ................................................................ 11

*May v. Five Guys Enterprises*,
    Case No. 1:23-cv-00029 (E.D. Va.) ......................................................... 17

*McKittrick v. Allwell Behavorial,*
    CH-2022-0174 (Muskingum County, OH) ............................................... 17

*O'Hern v. Vida Longevity Fund, LP*,
    No. 21-402, 2023 U.S. Dist. LEXIS 76789 (D. Del. May 3, 2023) ...................................... 8,15

*Opris, et al. v. Sincera Reproductive Medicine*,
    No. 2:21-cv-03072-JHS (E.D. Penn.) ..................................................... 18

*Sullivan v. DB Investments, Inc*.,
    667 F.3d 273 (3d Cir. 2011) .................................................................. 15

*Thomsen, et al. v. Morley Companies Inc.*,
    Case No. 1:22-CV-10271-TLL-PTM (E.D. Mich.), .............................................. 8,18

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
    2020 U.S. Dist. LEXIS 69614  (E.D. Pa. April 20, 2020). ....................................... 17

*Wood v. Saroj & Manju Invs. Phila. LLC*,
    Civil Action No. 19-2820-KSM, 2020 U.S. Dist. LEXIS 253960, 2021 WL 1945809  (E.D.
    Pa. May 14, 2021) .............................................................................. 6

<u>Rules</u>

Fed. R. Evid. 408 ....................................................................................... 15

Fed. R. Civ. P.  23(e) ........................................................................... 10,11,13

## INTRODUCTION AND SUMMARY OF ARGUMENT[1]

Plaintiff Laura Medina, joined by Maryelin Alberto[2] (collectively referred to herein as "Plaintiffs"), on behalf of 32,877 other current and former employees of Defendant Albertsons Companies, Inc. ("Albertsons" or "Defendant"), allege that they had their highly sensitive personal information stolen from Defendant's computers by cybercriminals in a data security incident that occurred between December 22 and December 24, 2022 (the "Incident"). The personal information involved in the Incident includes names, dates of birth, and Social Security numbers (the "Private Information"). Plaintiff Laura Medina filed an action on May 1, 2023 in the United States District Court for the District of Delaware (the "*Medina* Action"), and Plaintiff Maryelin Alberto filed an action on May 17, 2023 in the United States District Court for the District of Idaho entitled *Alberto v. Albertsons Companies, Inc*., C.A. No. 1:23-cv-00251-DKG (D. Idaho) (the "*Alberto* Action" and together with the *Medina* Action, the "Litigation"). The Litigation seeks to recover damages on behalf of a class of other similarly situated current and former Albertsons employees (the "Class Members").

Plaintiffs and their counsel settled the Litigation with Albertsons following arm's length negotiations before an experienced data breach mediator, Robert A. Meyer, Esq., of JAMS. Thereafter, on January 4, 2024, the parties executed the Class Settlement Agreement and Release, along with its accompanying exhibits, (D.I. 21 Ex. 1) (the "Agreement" or "Settlement Agreement") which resolves both Litigations, contingent on this Court's final approval of the settlement.  Plaintiffs now ask that this Court grant the Settlement final approval so that payment

---

[1] Defendant fully supports approval of the settlement agreement and does not oppose Plaintiffs' Motion.  By not opposing Plaintiffs' Motion, Defendant does not concede the factual basis for any claim and denies liability.  The description of the proceedings, including prior proceedings and proceedings in the related case, as well as legal and factual arguments, is Plaintiffs', and Defendant may disagree with certain of those characterizations and descriptions.

[2] As discussed further herein, Maryelin Alberto is a plaintiff in an action she filed against Albertsons in May 2023 in the United States District Court for the District of Idaho, which also arises out of the December 2022 data security incident. Both Medina and Alberto are parties to the Settlement Agreement and the Agreement resolves the claims asserted in this Action and in the Alberto Action.

may be made to the Class Members.

The Settlement is fair, reasonable, and adequate. Albertsons denies liability in the Litigation. Nevertheless, in order to avoid further protracted litigation, under the proposed Settlement Agreement, Albertsons will create a $750,000.00 non-reversionary cash Settlement Fund for the benefit of the Settlement Class. Agreement ¶ 1.38. The significant size of the Settlement Fund means that, after deduction of any Court-awarded attorneys' fees and costs, service awards, and settlement administration costs, Settlement Class Members who submitted valid Claims will receive significant consideration from the Settlement Fund, including reimbursement of lost funds and up to three years of credit monitoring, or an optional cash payment estimated to be approximately $193.19 based on the current total of 2,526 potentially valid Claim Forms. That this Settlement is more than adequate is obvious from the fact that approximately 7.6% of the Settlement Class Members submitted claims, which is well above the claims rate found in many other data breach settlements.

Proposed Class Counsel have considerable experience in data breach litigation and are keenly aware of the strengths and weaknesses of moving forward with the Litigation. Notwithstanding their confidence in the merits of their claims, Plaintiffs recognize the challenges and risks inherent in litigation, trial, and appeals, including certification of any class, and Albertsons' various defenses as to standing, liability, and other affirmative defenses. The Settlement will also avoid further delay in providing relief to the Settlement Class and expensive and protracted litigation with uncertain results. In exchange for the above-referenced consideration, Plaintiffs and all Settlement Class Members will release Albertsons and the other Released Parties from the claims asserted in the Litigation.

For the reasons discussed below, Plaintiffs request that the Court finally certify the Settlement Class for settlement purposes, finally appoint Plaintiffs as class representatives and Plaintiff's Counsel as final Class Counsel, and finally approve the settlement as fair, reasonable and adequate.

## STATEMENT OF FACTS

Plaintiffs brought the Actions individually and on behalf of all persons whose Private Information was allegedly compromised and subject to unauthorized access and exfiltration, theft, or disclosure in the Incident. Plaintiff Laura Medina filed the *Medina* Action on May 1, 2023 in the United States District Court for the District of Delaware, while Plaintiff Maryelin Alberto filed the *Alberto* Action on May 17, 2023 in the United States District Court for the District of Idaho. Both the *Medina* Action and the *Alberto* Action seek to recover damages on behalf of a class of all individuals in the United States who were sent a notice of the Incident by Albertsons on or around April 21, 2023. Albertsons filed motions to dismiss in both the *Medina* Action and the *Alberto* Action. While those motions were pending, and after a period of informal discovery and mutual exchange of information, the Parties agreed to a formal mediation. See Joint Declaration of David Lietz, Mason Barney and Tyler Bean filed on January 10, 2024 ("Joint Decl.") (D.I. 23 ¶ 5). The *Alberto* Action was stayed pending completion of the mediation.

On October 20, 2023, the Parties engaged in a full-day mediation before Mr. Meyer. Joint Decl., ¶ 6. Mr. Meyer is a highly sought after and accomplished mediator with a plethora of experience mediating data breach cases. At the conclusion of the mediation, the Parties reached an agreement to resolve all claims arising from or related to the Incident. *Id.*, ¶ 8. Subsequently, the Parties negotiated and drafted the Settlement Agreement, which they finalized on or about January 4, 2024. *Id.* The *Alberto* Action remains stayed, and the Parties agreed to use their best efforts to ensure that the *Alberto* Action remains stayed pending this Court's final approval of the Settlement Agreement. Agreement ¶ 12.14. Once final approval has been entered in the *Medina* Action and the appeals period has exhausted, the *Alberto* Action will be dismissed with prejudice. *Id.*

On January 11, 2024, the Court granted *Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement*, (D.I. 24), and on April 2, 2024, Plaintiffs' filed their *Motion for Attorneys' Fees, Expenses, and Service Awards*. (D.I. 27).

### A. Summary of the Settlement Terms

#### 1. Settlement Class

The proposed Settlement establishes the following Settlement Class:

> **All individuals in the United States who were sent a notice of the Incident by Albertsons on or around April 21, 2023.**

Agreement ¶ 1.34. The Settlement Class excludes any judge presiding over this matter and any of their first-degree relatives, judicial staff, Albertsons' officers or directors, and persons who timely and validly request exclusion from the Settlement Class. *Id.*

#### 2. Monetary Relief

Pursuant to the Settlement Agreement, Albertsons has agreed to create a non-reversionary cash Settlement Fund in the amount of $750,000.00 for the benefit of the Settlement Class. Agreement, ¶ 1.38. When viewed in light of the 32,877 Class Members, this substantial fund works out to $22.81 per Class Member.

The Settlement Fund will be used to pay all Settlement Claims, Settlement Administration Costs, any Service Awards to Class Representatives awarded by the Court, and any attorneys' fees and costs awarded by the Court to Class Counsel. Agreement. Settlement Class Members who submit a valid and timely Claim Form may receive compensation for one or more of the following categories of loss resulting from the Incident: (1) a cash payment for ordinary losses up to $1,000.00, with such ordinary losses to include (i) out of pocket expenses incurred as a result of the Incident, (ii) fees for credit reports, credit monitoring, or other identity theft insurance products purchased between December 23, 2022 and the date of the Claims Deadline, and (iii) up to five (5) hours of lost time, at $25/hour; and (2) a cash payment for extraordinary losses up to $5,000. *Id.*, ¶ 2.3.1. Settlement Class Members who submit a valid and timely Claim Form may also elect three (3) years of 3-bureau credit monitoring. *Id.* In lieu of all of the above-referenced Settlement benefits, each Settlement Class Member may elect to receive an Alternative Cash Payment that was estimated to be approximately $75 at the time of notice but was subject to a pro rata adjustment (upwards or downwards) as set forth in Paragraph 2.10 of the Agreement after all expenses are

4

paid from the Settlement Fund. *Id.*  At this time, Epiq estimates that the Alternative Cash Payment will be approximately $193.19 per person who requested it, based on the potentially valid claims already filed and assuming the Court grants the instant motion in its entirety. *See* Declaration of Eamon Mason Regarding Implementation of Notice and Settlement Administration filed herewith ("Epiq Decl."), ¶ 20.

### 3.  Non-Monetary Relief

Albertsons has agreed to meaningful Business Practice Commitments. See Agreement, ¶ 2.4. These Business Practice Commitments include revision of communications protocols and requirements; enhancement of contracts and notification requirements for third-party vendors; strengthening of associate education and awareness campaigns; deployment and configuration of modern machine-learning based email protection; maintenance of endpoint protection for Windows, Linux and critical assets; maintenance of security controls around identity management services; migration of sensitive edge data from non-centralized file servers to cloud; and the maturing of data security practices. *Id.* In the Settlement, Albertsons confirmed that all of these security measures have been implemented, and that all costs associated with the implementation of these Business Practice Commitments will be borne by Albertsons in addition to the Settlement Fund. *Id.*

### 4.  Attorneys' Fees, Reimbursement of Expenses, and Service Awards

The short form notice mailed to the Settlement Class Members stated that Class Counsel intended to request up to $250,000 in attorneys' fees, reimbursement of expenses up to $25,000; and that Plaintiffs would seek a $2,500 Service Awards to each Class Representative.  On April 2, 2024, Plaintiffs filed their *Motion for Approval of Attorneys' Fees, Expenses, and Service Awards* in which they requested $250,000 in attorneys' fees, expenses of $12,287.54, and Service Awards for the Class Representatives in the amount of $2,500 each (for a total of $5,000). (D.I. 27). For the reasons stated in those papers, which Plaintiffs incorporate herein, these requests are fair and reasonable when compared to other similar settlements, meaning that this factor supports final

approval of the Settlement. *Id.* at pp. 9-10.

## B. Implementation of the Settlement Notice Plan

The Parties agreed to utilize Epiq as the third-party Claims Administrator to assist with the dissemination of Notice and for the implementation of the Claims process. Joint Decl., ¶ 43. Epiq is one of the nation's leading class action settlement administrators. *Id.* The Notice Program implemented by Epiq included the following Notices: (1) Short Notice, in postcard form, sent via first-class U.S. mail, postage prepaid, to all those Settlement Class Members for which Albertsons provides a postal address (see Agreement, ¶ 4.3); (2) Long Notice that was available to Settlement Class members on the Settlement Website (*id.*, ¶ 1.9); and (3) a Reminder Notice sent to Settlement Class Members that was to be sent in the event that, at thirty (30) days prior to the Claims Deadline, the Claims Rate is less than 3% of the Settlement Class (*id.*, ¶ 4.3(a)(v)); see also Agreement, Exs. B and C.

On February 9, 2024, Epiq mailed 32,877 Postcard Notices via First Class USPS Mail to potential Settlement Class Members on the Class List with a valid mailing address. Epiq Decl. ¶ 9. As of April 12, 2024, a total of 4,788 Postcard Notices had been returned to Epiq without forwarding address information. *Id.* ¶ 11. As a result of skip trace searches performed by Epiq using a third-party lookup service, a total of 3,050 addresses were updated and Postcard Notices were promptly re-mailed to the updated addresses. *Id.* Out of the 32,877 Class Notices mailed to Settlement Class Members, notice to 1,738 Settlement Class Members was determined to be undeliverable, which is a 94.7% deliverable rate. *Id.* ¶ 12. This deliverable rate is well within the range of deliverable rates accepted in other class actions in this Circuit. *See, e.g., Kyle Stechert v. Travelers Home & Marine Ins. Co.*, No. 17-0784-KSM, 2022 U.S. Dist. LEXIS 113277, at *21 (E.D. Pa. June 27, 2022) (holding that an 89.84% deliverable rate "satisfied the requirements of Rule 23(c)(2)(B) and comports with due process"); *Wood v. Saroj & Manju Invs. Phila. LLC*, CIVIL ACTION NO. 19-2820-KSM, 2020 U.S. Dist. LEXIS 253960, 2021 WL 1945809, at *5 (E.D. Pa. May 14, 2021) (finding that a 92.8% deliverable rate was "reasonably calculated to

provide notice"). Given the strong early response to the notices, a reminder notice was not necessary.

The Claims Administrator also established a settlement website, www.ACDataSettlement.com (the "Website"), to permit Settlement Class Members to fill out a Claim Form online, to display important documents (*e.g.,* Long Form Notice, Settlement Agreement, and relevant filings in the Litigation), to provide upcoming deadlines, and to answer commonly asked questions. *Id.* ¶ 13. As of April 12, 2024, the Settlement Website had been visited by 671 unique visitors and 2,600 website pages had been viewed. *Id.* ¶ 14.  The Long Form Notice and Claim Form ("Claim Package") were available on the Website, but copies of those documents were mailed via First Class U.S. Mail to 11 persons who submitted requests for such documents. Epiq Decl. ¶ 9.  On February 9, 2024, Epiq further established a toll-free number, 1 (888) 870-7056, to provide information and accommodate inquiries from Settlement Class Members. *Id.* ¶ 15.  As of April 12, 2024, the toll-free number had received 154 calls representing 746 total minutes, and live call center representatives have handled 55 inbound calls representing 542 minutes of use. *Id.* ¶ 16.

The Notice Program provided members of the Settlement Class with important Settlement information and their rights thereunder, including a description of the material Settlement terms; how to access and submit a Claim Form; the date by which Settlement Class members had to opt-out of the Settlement; the date by which Settlement Class members had to object to the Settlement, and the Application for Attorneys' Fees, Costs, and Service Awards; the Final Approval Hearing date; and information regarding the Settlement Website where Settlement Class members could access the Settlement Agreement and other important documents. Complete opt-out and objection requirements were listed in the Agreement, as well as in the Long Notice. *Id*., ¶ 6. The notice program met all necessary legal requirements and provided a comprehensive explanation of the settlement in simple, non-legalistic terms. See Fed. R. Civ. P. 23(c)(2)(B). Having been apprised of their rights and opportunities, the Settlement Class Members were then given more than sufficient time to present their objections. The notice provided met both the requirements set forth

in this Court's Order Granting Preliminary Approval of Class Action Settlement and Fed. R. Civ. P. 23.

As of April 12, 2024, Epiq has received 2,526 potentially valid Claim Forms from Settlement Class Members. Epiq Decl. ¶ 19.  That already represents more than 7.6% of the 32,877 Settlement Class Members, and the Claims Period does not end until May 9, 2024, meaning that the number of participating Settlement Class Members will likely increase before the Court enters a final approval order. Agreement, ¶ 1.8.  This is a very high percentage of participating Settlement Class Members when compared to other recent data breach settlements that have been approved. *E.g., In re Wawa, Inc., Data Sec. Litig.*, No. 19-6019, 2022 U.S. Dist. LEXIS 72569, at \*20 (E.D. Pa. April 20, 2022) (finding that a 2.6% claims rate "actually compares favorably with other data breach settlements" and collecting cases); *see also Thomsen, et al. v. Morley Companies Inc.*, No. 1:22-CV-10271-TLL-PTM (E.D. Mich.), ECF No. 31 (1.24% claims rate); *In re Banner Health Data Breach Litigation*, No. 2:16-cv-2696 (D. Ariz.), ECF Nos. 170 at 1 and 195-3 at ¶ 12 (1.3% claims rate); *Corona v. Sony Pictures Entertainment, Inc.,* No. 2:14-cv-9600 (C.D. Cal.), ECF Nos. 145-1 at 11 n.8 & 164 at 2 (a claims rate of 0.7%).

### C.  Release of Claims

If the Court grants final approval, Plaintiffs and Settlement Class Members who did not timely and validly opt out of the Settlement will be bound by the terms of the Settlement, including the release and discharge of the Released Claims against the Released Parties. Agreement, ¶ 8.

### ARGUMENT

There is a strong judicial policy in favor of resolution of litigation before trial, particularly in "class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 484 (E.D. Pa. 2010) (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010)); *see also O'Hern v. Vida Longevity Fund, LP*, No. 21-402, 2023 U.S. Dist. LEXIS 76789, at \*14 (D. Del. May 3, 2023) ("Courts generally favor settlements to avoid lengthy litigation.").

"In this Circuit, a settlement is entitled to an initial presumption of fairness where it resulted from arm's-length negotiations between experienced counsel, there was sufficient discovery, and there were no objectors and only a small percentage of opt outs." *Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 493 (E.D. Pa. 2018). That is exactly what occurred here, and as such, the Court should apply a presumption of fairness when reviewing the Settlement. *See, e.g.*, Newberg on Class Actions §11.41 at 11-88 (3d ed. 1992); *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 796 (3d Cir. 1995) ("the court determines whether negotiations were conducted at arms' length by experienced counsel after adequate discovery, in which case there is a presumption that the results of the process adequately vindicate the interests of the absentees.").

### A.  The Settlement is Fair, Reasonable, and Adequate

Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled without court approval. To be approved, a class action settlement must be "fair, reasonable, and adequate." Rule 23(e)(2); *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017). In making this determination, Rule 23(e)(2) provides that the court should consider whether:

(A) the class representatives and counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment;[3]

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

---

[3] Class Counsel address the reasonableness of their requested attorneys' fees, expenses, and the service award in a separate filing. (D.I. 28).

Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiffs have fairly and adequately represented and protected the interests of Class Members. Furthermore, Plaintiffs' counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind. D.I. 23-1, 23-2 (providing firm resumes showing data breach experience).

Rule 23(e)(2)(B) instructs the Court to consider whether the Settlement was negotiated at arm's length. "The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Alves v. Main*, No. 01-cv-789 (DMC), 2012 U.S. Dist. LEXIS 171773, at *73-74 (D. N.J. Dec. 4, 2012) (internal quotations omitted). Here, the parties reached an agreement on all material terms only after Albertsons filed motions to dismiss both class action complaints, the parties exchanged the necessary voluntary discovery, and they engaged in weeks of negotiation, culminating with an all-day mediation on October 20, 2023, before Mr. Meyer, an experienced data breach mediator affiliated with a highly regarded mediation organization, JAMS. Joint Decl., ¶ 6. Notably, the discussion of attorneys' fees, costs and service awards did not take place until after the Parties agreed to all material Settlement terms, which further reduces the risk of any collusion. Joint Decl., ¶ 16.  Subsequently, the Parties continued to negotiate the details of the Settlement Agreement, which was finalized and executed on or about January 4, 2024.  *Id.* ¶ 8. Because all negotiations regarding settlement in the Litigation have been conducted at arm's length, in good faith, and absolutely free of any collusion (Joint Decl., ¶ 24), this factor strongly favors granting final approval to the Settlement.

In satisfaction of Rule 23(e)(2)(C), the Agreement accounts for the "costs, risks, and delay of trial and appeal" by providing Class Members with substantial monetary and non-monetary benefits[4] that will be actualized earlier than any benefits the Class would receive from a lengthy

---

[4] *Supra* III. B & C.

and costly trial. Even though Plaintiffs are confident that they could have succeeded at trial, they acknowledge that this case presented multiple risks. Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is an especially complex case in an especially risky practice area. Historically, data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Hammond v. Bank of N.Y. Mellon Corp.*, No. 08-cv-6060 (RMB) (RLE), 2010 U.S. Dist. LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010) (collecting cases). Even more notorious cases implicating data far more sensitive than at issue here have been found wanting at the district court level. *See, e.g., In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. 2019) (holding that plaintiff had standing to bring a data breach lawsuit). As one federal district court recently observed in finally approving a data breach settlement with similar class relief: "Data breach litigation is evolving; there is no guarantee of the ultimate result." *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327-JDP, 2021 U.S. Dist. LEXIS 40640, at *5 (W.D. Wis. Mar. 4, 2021) (citing *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430, at *3 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.")).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged. For now, data breach cases are among the riskiest and most uncertain of all class action litigations, making settlement the more prudent course when, as here, a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain mostly untested in a disputed class certification setting and unproven before a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty. Thus, this factor favors approval.

Under Rule 23(e)(2)(D), the Court must consider whether the Settlement treats Class Members equitably relative to each other. Here, the Settlement favors no group or individual with

11

preferential treatment. All class members are entitled to the same options for recovery, either reimbursement and credit monitoring, or a simple cash payment. Agreement, ¶ 2.3. As such, this factor also supports final approval of the Settlement.

### B.  The Girsh Factors Support Final Approval

The Third Circuit has traditionally evaluated class action settlements under the nine factors outlined in *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975): (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. Plaintiffs will address each factor to the extent it is applicable, many of which overlap. "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Am. Family Enters.*, 256 B.R. 377, 418 (D.N.J. 2000).

### 1.  The Complexity, Expense, and Likely Duration of the Litigation

The first *Girsh* factor considers "the probable costs, in both time and money, of continued litigation." *In Re: Cendant Corporation Litig.*, 264 F.3d 201, 233-34 (3d Cir. 1992) (Cendant II) (internal quotation marks omitted). "Where the complexity, expense, and duration of litigation are significant, the Court will view this factor as favoring settlement." *Bredbenner v. Liberty Travel, Inc.*, No. 09-905, 2011 U.S. Dist. LEXIS 38663, at *33 (D. N.J. Apr. 8, 2011). This factor undoubtedly weighs in favor of settlement. Here, as discussed above, due to the factual and legal complexities involved in this case, continued litigation would necessarily be expensive and time-consuming. *See In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 812 ("this settlement made its remedies immediately available and avoided the substantial delay and expense that would have accompanied the pursuit of this litigation"). Without the Settlement,

the parties would be engaged in contested motion practice and adversarial discovery for years. The claims advanced for the Settlement Class Members involve numerous complex legal issues in a relatively novel area of the law. As a result, continued litigation would be complex, time consuming and expensive, with no certainty of a favorable outcome. The Settlement Agreement secures substantial benefits for the Class with none of the delay, risk, excessive costs, and uncertainty of continued litigation. Therefore, this factor weighs in favor of final approval.

### 2.    Reaction of the Settlement Class

The Parties provided notice to 31,139 Settlement Class Members, and their reaction was very positive.  The deadline for Settlement Class Members to submit requests for exclusion and to file objections was on April 9, 2024, and as of April 12, 2024, only 1 Settlement Class Member had requested exclusion,[5] and no Settlement Class Member has submitted an objection. Epiq Decl. ¶¶ 17, 18, 19. See *In re Impinj, Inc. Derivative Litig.*, No. 18-1686-RGA, 2021 U.S. Dist. LEXIS 224687, at *7 (D. Del. Nov. 22, 2021) ("As a general rule, a small number of objectors weighs in favor of approval."). This positive response strongly supports granting final approval of the Settlement.

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed

The third factor also supports final approval. "This factor considers the degree of case development accomplished by counsel prior to settlement." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *35. "Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties." *In re Impinj*, 2021 U.S. Dist. LEXIS 224687, at *8 (*quoting  In re Johnson*, 900 F. Supp. 2d at 482). Here, prior to entering settlement negotiations, Plaintiffs' Counsel conducted informal discovery and gained "sufficient information to make an informed decision regarding settlement."  *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467,

---

[5] Epiq received a second request for exclusion but the individual who sent it is not a Settlement Class Member.  Epiq Decl. ¶ 17.

483 (D.N.J. 2012).

Class Counsel gathered all of the relevant information that was available regarding Albertsons and the Incident—including publicly available documents concerning the Incident. Joint Decl. ¶ 11. The parties also exchanged non-public information concerning the Incident, pursuant to Fed. R. Evid. 408, such as the applicable insurance coverage, the size and makeup of the Settlement Class, and the types of data exposed in preparation for a successful mediation. *Id.* ¶¶ 7, 13.

Furthermore, Plaintiffs' Counsel's experience in litigating data breach and privacy class actions provided them with knowledge to efficiently evaluate the strengths and weaknesses of the case which led to a timely resolution. D.I. 23-1, 23-2 (providing firm resumes showing data breach experience). "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV-16-01186-VAP(SPx), 2017 U.S. Dist. LEXUS 231075, at *19 (C.D. Cal. Apr. 27, 2017).

### 4. The Risks of Establishing Liability and Damages at Trial

The fourth, fifth, and sixth *Girsh* factors take into account the risks of establishing liability, establishing damages, and maintaining certification throughout the trial. These factors "balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement." *In re Krell v. Prudential Ins. Co. of Am. (In re Prudential)*, 148 F.3d 283, 319 (3d Cir. 1998). Here, as detailed above, Plaintiffs faced significant risks because their claims are relatively novel and have not been tested at trial. Therefore, the ultimate outcome of the litigation, had it gone to trial, was unknown. The Settlement removes all doubt and provides the Class with an excellent risk-adjusted recovery, including a non-reversionary $750,000 Settlement Fund, which will be used to pay out reimbursement for loss of ordinary expenses, loss of extraordinary expenses, and three years of complimentary credit monitoring, or in lieu of the foregoing, Settlement Class Members could have elected to receive Alternative Cash Payments that are presently estimated to be approximately $193.19 based on the current total of 2,526

potentially valid Claim Forms. Agreement ¶ 2.3.1; Epiq Decl. ¶ 20.  This Settlement provides a substantial benefit to the Settlement Class Members that would otherwise be uncertain if this case proceeded to trial. Therefore, these factors support final approval of the Settlement.

### 5.   The Ability of Albertsons to Withstand a Greater Judgment

For its fiscal year 2022, Albertsons reported net sales and other revenue of over $77 billion, with a net income of over $1.5 billion.[6]   As such, Albertsons could have withstood a greater judgment.   Nevertheless, the seventh *Girsh* factor is neutral because although "continuing the action to trial might result in a larger award for class members, . . . this possibility does not outweigh the risks of establishing liability, damages, and loss causation." *O'Hern*, 2023 U.S. Dist. LEXIS 76789 at \*23. "[T]he neutrality of this factor does not weigh against final approval of the settlement where, as here, the other *Girsh* factors support a conclusion that the settlement is fair, reasonable, and adequate." *Id.* at \*22-23. *See In re Warfarin*, 391 F.3d at 538 (finding that "this factor neither favored nor disfavored settlement" because Defendant's "ability to pay a higher amount was irrelevant to determining the fairness of the settlement.").

### 6.   The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The eighth and ninth *Girsh* factors assess the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation. As courts in this Circuit have noted, "in conducting the analysis, the court must guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Sullivan v. DB Investments, Inc*., 667 F.3d 273, 324 (3d Cir. 2011). The settlement must be judged "against the realistic, rather than theoretical potential for recovery after trial." *Id.* at 323.   Indeed, even

---

[6]  Albertsons Companies, Inc., Form 10-K, p 42 (April 25, 2023), *available at* https://www.sec.gov/ Archives/edgar/data/1646972/000164697223000045/aci-20230225.htm

recoveries representing a very small percentage of the defendant's maximum exposure, which this is not, may be found to be fair, adequate and reasonable. *See In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"). "The proposed settlement amount does not have to be dollar-for-dollar the equivalent of the claim…. and a satisfactory settlement may only amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *In re Shop Vac Mktg. & Sales Practices Litig.*, No. 4:12-MD-2380, 2016 U.S. Dist. LEXIS 69345, at *11 (M.D. Pa. May 26, 2016).

Here, the Settlement Agreement creates a $750,000 non-reversionary Settlement Fund. This non-reversionary structure is highly beneficial to the Settlement Class Members because all of the Class Funds not used for fees and expenses will be distributed among the claimants — rather than reverting to Defendant. Such a result provides a great benefit to the Settlement Class Members that is superior to other class action settlements that have received final approval by the Third Circuit. *See, e.g.*, *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 F. App'x 880, 882 (3d Cir. 2016) (affirming a district court's order granting final approval of a common fund that contained a reverter in which more than half of the common funds reverted back to the defendant).

Furthermore, the benefit conferred by the Settlement in this case is substantial and represents a better option than little or no recovery at all. Given the uncertainty at trial, in an evolving area of the law, and the prolonged time commitment and high litigation costs, the Settlement provides considerable value for the Class. Balancing the risks of potential defenses and the attendant risk of recovering nothing for the Class, the Settlement terms are well within the range of reasonableness.

### C.  The Settlement Satisfies the *Prudential* Factors

The Third Circuit has also identified additional nonexclusive factors for courts to consider in evaluating proposed class action settlements. *See In re Prudential*, 148 F.3d at 232-24. The

*Prudential* factors[7] often overlap with the *Girsh* factors. These factors "are illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010). The *Prudential* factors support granting final approval of the instant Settlement.

The first *Prudential* factor is met here because the information disclosed by the parties coupled with Class Counsel's factual investigation and extensive research into the key legal issues have enabled the parties to gain a strong grasp of the case and its probable outcome, which allowed the parties to make an informed decision prior to Settlement. "Factors two and three look at the outcomes of claims by other classes and other claimants." *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2020 U.S. Dist. LEXIS 69614, *67 (E.D. Pa. April 20, 2020). Here, there are no additional open cases or subclasses involving similar allegations, therefore all individual Settlement Class Members are being treated fairly under the same Settlement Agreement which supports final approval.

When viewed against other data breach settlements from around the country, the instant Settlement represents a strong result for the Settlement Class because the benefits it offers to the Settlement Class Members are in line with, or exceed, other comparable data breach settlements. As noted, when divided by the total number of Settlement Class Members (a metric frequently relied on by courts to evaluate the fairness of a common fund settlement), the $750,000 non-reversionary fund works out to $22.81 per Class Member, which exceeds the per person recoveries achieved in other similarly sized data breach class action settlements finally approved by courts

---

[7] The *Prudential* factors are: (1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; (2) the existence and probable outcome of claims by other classes and subclasses; (3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved or likely to be achieved for other claimants; (4) whether class or subclass members are accorded the right to opt-out of the settlement; (5) whether any provisions for attorneys' fees are reasonable; and (6) whether the procedure for processing individual claims under the settlement is fair and reasonable. *In re Prudential*, 148 F.3d at 323-24.

around the country. *See e.g. Linman v. Marten Transport*, No. 22-cv-204 (W.D. Wis.) ($520,000 for 35,511 class members, which equals $16.64 per person); *May v. Five Guys Enterprises*, Case No. 1:23-cv-00029 (E.D. Va.) ($700,000 for 37,922 class members, equating to $18.45 per person); *McKittrick v. Allwell Behavorial,* CH-2022-0174 (Muskingum County, OH) ($650,000 for 31,000 class members, equaling $20.97 per person). Likewise, the actual amounts being paid to claimants either equal or are more generous than other data breach class actions that have received court approval. *See, e.g. Chapman, et al. v. Insight Global LLC,* No. 1:21-cv-824-CCC (M.D. Penn.), ECF No. 65 (settlement agreement provides reimbursement up to $250 in ordinary losses and $5,000 in extraordinary losses); *Opris, et al. v. Sincera Reproductive Medicine*, No. 2:21-cv-03072-JHS (E.D. Penn.), ECF No. 69 ($150 payment for lost time and emotional distress and up to $2,000 for financial damages); *Cochran, et al. v. Kroger Co.*, No. 5:21-cv-01887-EJD (N.D. Cal.), ECF No. 108 at 9:3-4 (2 years of 3 bureau credit monitoring or a cash payment or a documented loss payment; payments to California class members were $72 each, and $36 each for non-California class members); *Thomsen, et al. v. Morley Companies Inc.*, Case No. 1:22-CV-10271-TLL-PTM (E.D. Mich.), ECF No. 24-4 (ordinary losses up to $2,500, 4 hours of lost time at $20 per hour, $75 for California Residents, 3 year of 3 bureau credit monitoring, 1 year of password managing service). Because the settlement benefits achieved here for the Settlement Class Members are similar to, or better than, those achieved in other approved settlements, this factor reflects that the settlement is fair. In light of the difficulties and expenses Settlement Class Members would face to pursue individual claims, this settlement amount is appropriate.

The fourth *Prudential* factor is satisfied because Settlement Class Members were provided with robust notice and the opportunity to opt-out or file objections to the Settlement – and no Class Member has objected and only 1 Settlement Class Member elected to opt-out. The Settlement satisfies the fifth factor because Class Members were able to review *Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards* with sufficient time to object to those requests, and yet no objections were raised. Lastly, the procedure for processing claims under the Settlement is also fair and reasonable. The Claims Period does not end until May 9, 2024 (nearly a month

from now) meaning that Settlement Class Members will have 90 days to submit a claim, which is substantial time to claim their benefits. Agreement, ¶ 1.8.

In sum, all of the applicable *Prudential* factors further support granting final approval of the Settlement.

## CONCLUSION

For all the foregoing reasons, the Court should grant final approval of the Settlement in the form of the [Proposed] Order filed herewith.

Dated: April 12, 2024.                    Respectfully Submitted,

/s/ *P. Bradford deLeeuw*
P. Bradford deLeeuw (DE #3569)
**DELEEUW LAW LLC**
1301 Walnut Green Road
P.O. Box 2323
Wilmington, Delaware 19807
(302) 654-7444
brad@deleeuwlaw.com

Mason A. Barney (*pro hac vice*)
Tyler J. Bean (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (212) 532-1091
mbarney@sirillp.com
tbean@sirillp.com

David K. Lietz
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
(t) 202.744.1795
(f) 202.686.2877
dlietz@milberg.com

*Counsel for Plaintiffs and the Settlement Class*

19